BEARDSLEY v. BEARDSLEY.

(Circuit Court of Appeals, Eighth Circuit. February 14, 1898.)

No. 967.

1. TENDER—CONDITIONS—INTEREST.
Where a decree was rendered directing complainant to pay to defendant, or to the registry of the court, a certain sum, and defendant, on such payment, to deliver to complainant, or into the 'registry of the court, certain stock, from which decree defendant appealed to the supreme court, held, that a tender to defendant's solicitor of the amount of the decree, with interest, coupled with a demand for the immediate surrender of the stock, and involving a settlement of the pending appeal, was bad, as a conditional tender, and did not stop the running of interest. This would be so although nothing was said respecting the dismissal of the appeal, if the effect of acceptance of the tender would be to prejudice the prosecution of the appeal.

**2. SAME—INTEREST.**

In order that a tender shall stop the running of interest, the debtor must show that he has kept on hand, so as to be constantly ready and able to pay the amount of the tender in lawful money at any time the creditor should elect to take it.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

On the 11th day of March, 1886, appellee, Paul F. Beardsley, began suit in equity against John D. Beardsley, appellant, and the Arkansas & Louisiana Railway Company, in the United States circuit court for the Eastern district of Arkansas, the general object of which was to obtain an accounting between the Beardsleys, and to compel the transfer to Paul F. Beardsley of certain shares of stock claimed by him in the said railway company. This litigation resulted in a decree, February 24, 1887, adjudging that said Paul F. Beardsley pay to John D. Beardsley the sum of $7,756.29, with interest from December 24, 1886, at the rate of 8 per cent. per annum until paid. This decree provided that said sum of money could be paid to said John D. Beardsley, or into the registry of the court. It was also adjudged in said decree that said John D. Beardsley should, upon such payment, deliver to the complainant, or into the registry of the court, 1,704 shares, of the face value of $100 each, of the full-paid stock of the said Arkansas & Louisiana Railway Company. The decree declared that said John D. Beardsley should have a lien on said stock for the payment of said sum of money, and, in default of such payment within 30 days from the date of the decree, that said stock be advertised and sold by the master therein named. From this decree, John D. Beardsley, in due form, took an appeal to the supreme court of the United States on the 30th day of March, 1887, and on the 6th day of April, 1887, gave a supersedeas bond therein, which was approved by the court on the 9th day of April, 1887. In this condition of the controversy, Paul F. Beardsley claims to have made on the 25th day of April, 1887, a tender to J. M. Moore, solicitor in said suit for John D. Beardsley, of the sum of $7,968.30, the amount of principal, with interest on same, decreed to be paid by said Paul F. Beardsley to John D. Beardsley, which fact, and the legal effect thereof, are the principal matters in controversy in this suit.

On October 22, 1887, pending said appeal, Paul F. Beardsley filed a supplemental bill in said cause; making the St. Louis, Iron Mountain & Southern Railway Company and Jay Gould defendants. This supplemental bill, after reciting the proceedings and decree in the above-named original cause, set out an agreement hypothecating the bonds of the Arkansas & Louisiana Railway Company with the St. Louis, Iron Mountain & Southern Railway Company, by which the former company was to pay not less than $12,000 per year of the net earnings of the road on the indebtedness owing to the St. Louis, Iron Mountain & Southern Railway Company, secured by said hypothecation. The bill alleged that the earnings of the Arkansas & Louisiana Railway Company for the year 1887 amounted to more than $42,000, only $2,000 of which had been paid on said indebtedness of the Arkansas & Louisiana Railway Company to the St. Louis, Iron Mountain & Southern Railway Company, and charged that John D. Beardsley had been permitted to receive and use, and was using, the net earnings and income of the said Arkansas Railway Company, and, in disregard of said decree, was appropriating to his own use the earnings of the road. The bill then prayed for the appointment of a receiver for the said Arkansas & Louisiana Railway Company, to take charge of and operate said road under the directions of the court, and to take possession of all its earnings, and, after paying the necessary operating expenses, to turn over the surplus to the St. Louis, Iron Mountain & Southern Railway Company, in accordance with said agreement between the said railroads: that said receiver be empowered and directed, until all the indebtedness of the Arkansas Railway Company to the St. Louis Railway Company be fully paid; that the said John D. Beardsley and the said Arkansas Railway Company and the said St. Louis Railway Company be enjoined from interfering with, or otherwise controlling, the said Arkansas Railway Company. It prayed that the master of the court be appointed to ascertain and report what part, and how much, of the earnings of the said Arkansas Railway Company had been taken by John D. Beardsley and applied to his use, or to purposes for-

eign to said Arkansas Railway Company, since the filing of said original bill in this case, and that said John D. Beardsley be compelled to pay to said receiver the amount so ascertained by such master, the same to be paid by such receiver upon the indebtedness aforesaid. The answer of John D. Beardsley therein, after denying the allegations of the bill, alleged that the railway company was indebted to him on certain accounts, and that the money received by him was in payment of said indebtedness. Jay Gould and the said railway company answered, setting up the contract between John D. Beardsley and the Arkansas Railway Company, by which 51 per cent. of the stock and bonds of the Arkansas Railway Company had been transferred to said Gould to secure an indebtedness of $109,609.57, under a construction contract of date March 7, 1887. On December 3, 1887, the receiver was appointed, who, under the direction of the court, took possession of the said Arkansas Railway Company, with all its properties, of every description, then in the hands of said John D. Beardsley, with further directions that whenever the surplus earnings and revenues of the said Arkansas Railway Company, after paying the operating expenses and for repairs and materials, amount to $1,000, the same shall be paid over by the receiver to the St. Louis Railway Company, on the debt due said company from the Arkansas company.

On July 25, 1889, the court referred the matter to C. B. Moore, master in chancery, with directions to state the account between said John D. Beardsley and the Arkansas Railway Company since August 20, 1886, in the case to which this proceeding is supplemental, and especially to ascertain what sums of money had been allowed or paid to John D. Beardsley by the directors of said railway company since the last-named date, or otherwise illegally allowed said defendant. On August 5, 1889, the master filed his report. And on May 9, 1891, the court rendered a decree therein, which, inter alia, adjudged that the Arkansas Railway Company recover from John D. Beardsley the sum of $21,072.16, with interest from the 5th day of August, 1889, the date of the master's report; that upon the payment by said Arkansas Railway Company of its debt to the St. Louis Railway Company, for which certain of the bonds of the said Arkansas Railway Company are held and pledged, as per the settlement contract between said companies of June 11, 1885, and upon the payment by Paul F. Beardsley of his indebtedness to said John D. Beardsley, said John D. Beardsley, the Arkansas Railway Company, and the St. Louis Railway Company should deliver to said Paul F. Beardsley, or his solicitors, 80 of the 240 first mortgage bonds then held by the St. Louis Railway Company as collateral security as aforesaid. On the 9th day of May, 1891, on the application of Jones & Martin, solicitors of Paul F. Beardsley, the court made an order fixing a lien in favor of said Jones & Martin on said judgment for $1,164.76, which lien was on the 11th day of August, 1891, transferred by Jones & Martin to Paul F. Beardsley; and on the 9th day of December, 1895, Paul F. Beardsley acknowledged satisfaction on the record of said decree in favor of Jones & Martin. On the margin of the record of the final decree rendered February 24, 1887, in the original cause, said Jones & Martin on June 2, 1891, made an entry reciting that June 2, 1891, they had filed their statement, claiming a lien in the original cause in their favor of $5,000 each for their services as solicitors, and acknowledging full satisfaction thereof. On the 17th of July, 1895, another indorsement was made on the record of the decree in the supplemental cause, reciting that in pursuance of an agreement of February 23, 1892, between said Gould and John D. Beardsley, satisfaction of said judgment for $21,072.16 was acknowledged, subject to the rights and interest in same belonging to Paul F. Beardsley by virtue of an agreement between said Gould and Paul F. Beardsley, and, subject to the lien in favor of the said Jones & Martin, one-third "of this judgment is hereby assigned to said Paul F. Beardsley, without recourse on the Arkansas & Louisiana Railway Company." And thereupon said Paul F. Beardsley acknowledged on the record satisfaction in full of one-third interest acquired by him in said decree under assignment thereof by the Arkansas Railway Company aforesaid. The decree in the original cause was affirmed on said appeal to the supreme court in 1891, and thereafter, on the 3d day of August, 1891, the said Paul F. Beardsley, acting through his solicitor, tendered the same amount originally tendered to said Moore, again requesting delivery of the said stock, to which Moore answered that he did not have the stock in his possession, but he would receive any money Paul F.

Beardsley had to pay, and credit it on the decree. After one or more of such interviews, finally, on August 7, 1891, Paul F. Beardsley's solicitor paid over to said Moore, without condition, the said sum of $7,968.30, which was principal and interest due on the money judgment in favor of John D. Beardsley to April 25, 1887, and which was credited by said Moore, of that date, on said judgment. Shortly thereafter, on the application of said Jones & Martin, in their intervention claiming a lien on said shares of stock adjudged to Paul F. Beardsley, the court made an order directing said Gould and John D. Beardsley to turn over the same to the registry of the court, subject to its orders. The present contention between the Beardsleys is as to whether or not the tender of April 25, 1887, was sufficient to stop the running of interest thereafter; the said John D. Beardsley refusing to enter satisfaction of the debt due him under the original decree unless the interest accruing between the 25th day of April, 1887, and the 7th day of August, 1891, amounting to about $2,657.80, was paid. Paul F. Beardsley instituted the present suit August 13, 1891, alleging the tender of April 25, 1887, with other allegations tending to show that John D. Beardsley was not entitled to demand further interest after April 25, 1887, praying for a decree enjoining him from a threatened advertisement and sale of said shares of stock to satisfy said interest, and for a decree compelling the satisfaction of said judgment. On the hearing of this bill the circuit court entered a decree as prayed for in the bill, to reverse which John D. Beardsley prosecutes this appeal.

J. W. House, for appellant.

John J. Joyce (Edward H. Murphy, on brief), for appellee.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

Had appellee in his bill disclosed on its face some of the positions taken in argument on this hearing, by his counsel, as to some matters of fact, the bill would have been quite vulnerable to attack for inconsistency and contradiction. While the pleader may allege any number of facts, all tending to show that in legal effect they entitle him to the relief sought, yet the facts pleaded must be consistent with each other. If one fact stated be immediately followed by another statement wholly contradictory of the other, the pleader would, in justice to the adversary, be compelled to elect upon which of the two allegations he would stand.

The first contention of counsel for appellee is that the tender of April 25, 1887, was not accompanied with a demand for delivery of the stock to him. He then argues his cause on the theory of such demand having been made. In the forum of conscience he ought to admit the fact of a conditional tender before being heard to base an argument thereon; for, if such be the actual fact, it is not true that he made a tender of the naked payment of $7,968.30 without demanding a delivery of the stock. In the absence of any opinion in this record of the circuit court, we are not advised as to the particular ground upon which the decree was based. Because of the various and independent positions assumed in argument in justification of the decree, we cannot assume that the court found as a matter of fact that the tender of April 25, 1887, was made unconditionally. And, in view of all the evidence and circumstances, we are unable to perceive any reasonable escape from the conclusion that the offer to pay the money was made to depend upon the simultaneous delivery of the

stock found by the decree to belong of right to appellee. In the first place, it is indisputable that appellee, in order to provide money for this tender, arranged therefor with one Drexler, at San Francisco, on the understanding between them that said stock was to be turned over to him as collateral security. To this end, Drexler never put the money into appellee's hands, or subjected it to his absolute control, but protected himself by drawing a check for the amount on a New York bank, made payable to the bank at Little Rock, Ark., and sent it thereto, accompanied with a letter of special direction. So, when the money was drawn out of the bank to make a tender, it was not intrusted to the hands of appellee; but the clerk of the bank took it, and accompanied Mr. Martin, appellee's solicitor, to make the tender. And, when the tender as made was refused, the money was returned into the bank, and Drexler's check therefor was destroyed. Mr. Martin's version of what occurred between him and Mr. Moore, appellant's solicitor, at the time of the alleged tender, is substantially as follows:

"In the afternoon of that day he got C. T. Walker, clerk of the bank, to go, with the sum of $7,968.30, in legal-tender money, with him, to Moore's office, and told Moore that, as the solicitor of Paul F. Beardsley, he had come to make him a tender of said money. Moore said he wanted to put his answer in writing, and that it would be, in substance, that he would accept the money, but could not deliver the stock. That he (Martin) then said to him that he made the tender of the amount under decree of the court; that he could take it, and deliver the stock. Moore wanted him to reduce his tender to writing, but he replied that no writing was necessary, as he brought the money, with Mr. Walker as a witness to the transaction. Moore replied that he was willing to accept the money, and hold it pending the appeal to the supreme court."

Without at all questioning that Mr. Martin acted within the admissible lines of fidelity to his client, it must be said that there was some refined diplomacy in his approach to Mr. Moore. His ingenuity to obtain the advantage of an apparent unconditional tender, while being sure that his client was to have the stock on parting with the money, is palpable. That the matter of the delivery of the stock was not only discussed between them, but must have first been suggested by Martin, is evident from Martin's own statement, because he states that Moore said he would accept the money, "but could not deliver the stock." Why should Moore make this response, unless it was understood that the tender was made on demand of the delivery of the stock? That the apprehension of Mr. Moore was well founded, that the acceptance of the money was designed by Mr. Martin to imply a settlement of the pending appeal, is made manifest by the statement then made by Martin to Moore, "that he made tender of the amount under decree of the court." Mr. Moore, an astute and cautious lawyer, alive to the infirmity of human memory, and the liability to misconception of language employed in a verbal colloquy, suggested at the outset that he (Martin) put his tender in writing, and that he (Moore) would make his answer in writing. This reasonable and fair suggestion, Mr. Martin saw fit to decline. Mr. Moore, in order that his position might be made absolute, did at the time write out his answer, as follows:

"Messrs. Martin and Jones: In response to the tender here now made by you of the sum of $7,966.57 in payment of the amount decreed to the defendant John D. Beardsley under the decree in said cause, I hereby agree to accept and hold the same without prejudice to the supersedeas granted under the appeal taken by John D. Beardsley in said cause to the supreme court.

"John M. Moore,

"Attorney for Defendant J. D. Beardsley.

"The above is my response to the tender in said cause. Mr. Martin demanded that I deliver the stock. I advised him I did not have it."

If, indeed, it was Mr. Martin's purpose to make an unconditional tender of the money, it would have been the simplest and frankest method of making that fact known, to have at once said to Mr. Moore, "I make you this tender, whether or not you or your client deliver the stock." More than this, if it was the purpose in good faith of Mr. Martin to pay over this money without more, the sure and certain way was afforded him by the decree of the court, which authorized the payment of the money into the court registry. Had he done this, all controversy would have been ended as to the character and effect of the tender. This opportunity and right, however, the appellee was unwilling to avail himself of, for the obvious reason that under his arrangement with Drexler he could not leave the money on deposit with the clerk of the court without putting up with Drexler, as collateral security therefor, the said shares of stock.

Unwilling to rest the decree upon the question of fact, that no demand was made for the delivery of the stock at the time of the tender of the money, counsel for appellee contends that, even if such demand was made, it was only such condition as the appellee had a right to insist on, as payment of the money and delivery of the stock were made by decree of the court interdependent or simultaneous acts, to be performed by the respective parties; citing in support the language of the court in Halpin v. Insurance Co., 118 N. Y. 165–176, 23 N. E. 482, 485:

"That, where there is no dispute as to the amount of the debt, a tender may always be restricted by such conditions as by the terms of the contract are conditions precedent or simultaneous to the payment of the debt, or proper to be performed by the party to whom the tender is made."

As applied to the subject-matter under consideration by the court therein, the above quotation may be conceded to have expressed a proper rule. But as applied to the facts in this case it is very misleading. When this alleged tender was made on the 25th day of April, 1887, John D. Beardsley had taken an appeal from the decree to the supreme court. He had given therein a supersedeas bond, not only as evidence of his good faith in taking the appeal, but as ample security and protection to the appellee for any damage sustained by him in consequence of such appeal. The record shows that on such appeal he claimed an account against Paul F. Beardsley for over $16,000, and he complained that the court in its decree cut off his claim by over one-half. He also controverted by his appeal the right of Paul F. Beardsley to the amount of stock awarded him by the decree of the circuit court. There is nothing presented in this record to justify this court in impugning the good faith of John D. Beards-

ley in prosecuting said appeal. He could not have accepted the money tendered on the 25th day of April, 1887, on the theory of appellee's counsel, that it carried with it, ex vi termini, a demand for the stock, and that its acceptance therefore would have been tantamount to a surrender of the stock, without abandoning the prosecution of his appeal. Mr. Moore was right in his contention that he should be required to accept the money on condition only that it should not prejudice the appeal, for the reason that the very moment the fact should have been brought to the attention of the supreme court that appellee had performed the decree on his part, and that appellant had accepted its performance, the court would have dismissed the appeal. The supreme court is rigid in its adherence to the rule of practice that whenever the matter appealed from has been adjusted between the parties, or the judgment of the lower court has been performed, the appeal thereafter presents only a moot case, and should be dismissed. Little v. Bowers, 134 U. S. 557, 10 Sup. Ct. 620, and cases cited. Therefore the tender made by appellee involved not only the immediate delivery of the stock in question to the appellee, but it involved a surrender of appellant's right to the opinion and judgment of the supreme court on the matter in controversy between the parties. Such a tender was in the worst form of a conditional tender, denounced by all the authorities as insufficient to stop the running of interest. It is the common learning of the books that the tender of a sum, even when the amount is not controverted, coupled with a demand that the other party perform some other act, or surrender some other right, as a condition of its acceptance, is bad, for the simple reason that the party making the tender "has no right to attach a penalty to the condition." Henderson v. Cass Co. (Mo. Sup.) 18 S. W. 992; L'Hommedieu v. Dayton, 38 Fed. 926; Brown v. Gilmore, 8 Greenl. 107; Roosevelt v. Bank, 45 Barb. 579. Waiving the question as to whether or not the rule that a tender made pendente lite, in order to stop the running of interest, requires that the money should be paid into court, should be applied to the facts of this case, there is another rule firmly established in the law governing tenders,— that, in case of a tender in pais, to make it effectual to stop accruing interest, the money so tendered, or other like lawful money, should be kept on hand by the party pleading the tender, so that he would be ready and able to pay the same to the payee at any time the latter should elect to take it. The debtor in such case avoids the payment of interest upon the supposition that the creditor should have accepted the money, and that thereafter the debtor had set it apart for him, subject to his order, and the debtor has thus been deprived of its use, and any profit therefrom. In Gyles v. Hall, 2 P. Wms. 378, it is laid down that:

"To entitle the mortgagor to a discharge of the interest, it must appear that ever since the tender and refusal he has kept the money ready for the paying of the mortgage, and that no profit has been made of it. That the party making the tender must be at all times thereafter in readiness to pay does not appear to be anywhere questioned."

And so are all the authorities. State v. Illinois Cent. R. Co., 33 Fed. 730; Thayer v. Menkie, 86 Ill. 474; Shields v. Lozear, 22 N. J.

Eq. 451; Gray v. Angier, 62 Ga. 597; Park v. Wiley, 67 Ala. 312; Slack v. Price, 1 Bibb, 274; Roosevelt v. Bank, 45 Barb. 579; Bissell v. Heyward, 95 U. S. 587. In Park v. Wiley, supra, the court said:

"In the present case it is apparent the tender was not kept open, nor did the vendee continue in readiness to pay. A part of the money had been borrowed, and it was immediately returned to the lender; the vendee deriving the benefit from its use. When a tender is relied on, the duty resting on the party making it is to keep the money safely,—not the identical coin or bank notes, but money of like kind,—so that he may produce it when required. The tender is then kept open, ready for the acceptance of the other party when he manifests a willingness to receive the money."

It is too clear to admit of reasonable debate that appellee, after the 25th day of April, 1887, to the 7th day of August, 1891, neither had on hand the identical money, nor any other like money. It is true, he stated in his deposition that he could have obtained the money at any time, but the controlling facts affirmatively appear that the check which represented the money tendered was destroyed; that he thereafter had no money in bank; and he does not show that he had any money anywhere. On the contrary, it appears that when the court made the order on the intervening application of his attorneys, impounding the shares of stock to enforce the lien thereon for the fees of Jones & Martin, he applied to the court for a modification of this order, on the ground, stated by him, that he could not raise the money with which to make the tender of August, 1891, without the use of this stock as collateral security. And, furthermore, the fact appears that when he obtained the money from Drexler to make the tender of August 7, 1891, he again pledged said stock as collateral security therefor.

The final contention of appellee is that between the 25th day of April, 1887, and the time of the payment of the money, in August, 1891, the appellant made use of the stock, which should have been turned over to appellee, and made a profit therefrom, while the appellee suffered a loss from not having the possession and control of this stock. This contention is predicated on the assumption that, to enable the appellant to obtain from Jay Gould $51,000, he not only sold to Gould 51 per cent. of the stock of the Arkansas Railway Company, but pledged the remaining 49 per cent. of said stock, and that he got the benefit in said transaction of the shares of stock belonging to appellee. The case of Cheney v. Bilby, 36 U. S. App. 720, 20 C. C. A. 291, and 74 Fed. 52, is relied upon to support this contention. But we do not think that a fair analysis of the testimony touching this transaction bears out this contention. It is true that the entire stock in question was turned over to Gould's agent in said transaction, as at the time the said certificates of stock were not so divided up as to segregate 33 per cent. thereof from the mass; and, when it was so turned over, Gould distinctly understood that he had bought from John D. Beardsley, in fact, only 51 per cent. of said stock, while John D. Beardsley was entitled to 66⅔ per cent. Gould at the time understood that the stock was subject to the decree of the court awarding it to Paul F. Beardsley, and it was in no wise essential to the completion of the contract of the sale of 51 per cent. This fact is supported by

the testimony of Gould's own agents and representatives. On the contrary, the very reverse of this proposition is made to appear conclusively by the record in this case. In the supplemental proceedings, set out in the statement of facts by the decree of the court, the Arkansas Railway Company was awarded a recovery against John D. Beardsley for the sum of $21,072.16, with interest from the 5th day of August, 1889, to the date of the filing of the master's report. This sum expressed the net earnings of the said Arkansas Railway Company from the original decree in the cause to the date of the appointment of the receiver in the supplemental cause,—December 3, 1887. Of this sum, Paul F. Beardsley was entitled to one-third, which, with interest to the date of payment, amounted to $10,000;' and this amount John D. Beardsley paid to him. This record further shows that from the period of the appointment of the receiver to the time of final payment, August 7, 1891, and until both the Beardsleys disposed of their interests in the Arkansas Railway Company, the receiver paid over to said St. Louis Railway Company the net earnings of the road, in discharge of a debt which the Arkansas Railway Company owed it. This payment was made in accordance with the request of the supplemental bill filed by Paul F. Beardsley. . So that it does appear that Paul F. Beardsley in fact got the benefit of one-third of the net earnings, through the benefit to the Arkansas Railway Company, from the date of his purchase until August 7, 1891; and in this way he got, during the time his stock was withheld from him by the action of John D. Beardsley, the benefit thereof, for the simple reason that the liquidation, out of the earnings of the road, of the indebtedness of the Arkansas Railway Company to the St. Louis Railway Company enhanced to that extent the value of Paul F. Beardsley's shares of stock. Recurring to the case of Cheney v. Bilby, supra, it is well to observe that the facts of that case do not warrant the conclusion sought to be drawn therefrom by appellee, that unless it appears in this case that between April 25, 1887, and August 7, 1891, Paul F. Beardsley himself realized interest on the money tendered in April, 1887, no interest is allowable against him thereafter. An examination of the record in the Cheney Case shows that Wisherd, the debtor in that case, testified:

"I got the money at the First National Bank of Lincoln, Nebraska. The money was in gold. I arranged to have the money kept at that bank, and the bank was instructed to pay to Cheney at any time he might ask for it, and I so informed Russell & Holmes. On the day that the tender was made, the bank was instructed to pay the money to Cheney, or any one demanding it for him. My arrangement with the bank was to keep the money there for the use of Cheney at any time he might ask for it."

It was therefore in respect of this state of facts that the court held that no interest was chargeable against the debtor after the tender, for the reason that he had kept his tender good, and the money thereafter at all times was subject to the order of the creditor. As he had thereby lost the use of the money, it was inequitable to charge him with interest. Whereas in this case Paul F. Beardsley did not keep the money in bank subject to the order of John D. Beardsley. And while John D. Beardsley did not enjoy the use of the money because

it was tendered on condition that he could not accept without a surrender of the valuable right of appeal, and as during the time Paul F. Beardsley received the full benefit of the shares of stock, which were to be delivered to him on the payment of the money, that principle of justice which says that equality is equity demands that the appellant should have his interest. It results that the decree of the circuit court is reversed, and the cause is remanded, with directions to vacate its decree, dissolve the injunction granted therein, dismiss the bill, and tax the costs against the complainant.