BURKE et al. v. MOUNTAIN TIMBER CO.

(District Court, W. D. Washington, S. D.   June 15, 1915.)

No. 3.

1. COURTS ⊙⟶269—JURISDICTION OF FEDERAL COURTS—LOCAL SUITS.

A federal court has jurisdiction of a suit against a nonresident defendant to foreclose a mortgage on land within the district, although neither party is a citizen of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. ⊙⟶269.]

2. COVENANTS ⊙⟶93—COVENANT OF TITLE—LIABILITY OF COVENANTOR.

A covenantor of title in a deed is not liable to the covenantee for damages sustained by the latter by reason of an unsuccessful attack upon his title by a third person.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 101–103; Dec. Dig. ⊙⟶93.]

3. VENDOR AND PURCHASER ⊙⟶143—SUIT TO FORECLOSE PURCHASE-MONEY MORTGAGE—DEFENSES.

A purchaser of timberland under a contract which gave it 20 days in which to examine the abstracts of title and provided that any objections to the title not made within that time should be deemed waived, and which has held undisturbed possession and removed the greater part of the timber from the land, cannot defend against a purchase-money mortgage on the ground that as to some of the land there was no title of record in the grantor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 267–270, 311; Dec. Dig. ⊙⟶143.]

4. PARTNERSHIP ⊙⟶147—CONTRACTS—POWER OF PARTNER TO BIND COPARTNER.

The partner of a grantor in a warranty deed, who claimed an interest in the property, *held* to have no authority to bind him by an undertaking to indemnify the purchaser against any possible attacks which might be made upon the transfer of title by such grantor, the partner, or their heirs or personal representatives.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 256, 257; Dec. Dig. ⊙⟶147.]

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. INTEREST ⊝═50—SUFFICIENCY—KEEPING TENDER GOOD.

 Tenders by the maker of notes to the bank at which the notes were payable, after the death of the payee and without the knowledge of his administrator, but which were conditioned on delivery of his receipt and were not kept good by any deposit of the money, *held* ineffectual to stop the running of interest.

 [Ed. Note.—For other cases, see Interest, Cent. Dig. § 114; Dec. Dig. ⊝═50.]

In Equity. Suit by George B. Burke and E. W. Ferris, as administrator of the estate of David L. Kelly, deceased, against the Mountain Timber Company. Decree for complainants.

Clark, Skulason & Clark, of Portland, Or., and Gordon & Easterday, of Tacoma, Wash., for plaintiffs.

Edmund C. Strode, of Portland, Or., and Imus & Son and Coy Burnett, of Portland, Or., for defendant.

CUSHMAN, District Judge. This is a suit to foreclose a purchase-money mortgage brought by the administrator of the mortgagee, David L. Kelly. A number of claims in recoupment are interposed in the answer, presently to be considered.

[1] David L. Kelly died in Oregon, and an administrator of his estate was appointed in that state. The defendant is a Nebraska corporation. This suit was originally brought by Burke, an assignee of the administrator appointed by the Oregon court. The complaint alleged the citizenship of the defendant and that the assignee was a citizen of the state of Washington, but failed to disclose the citizenship of the assignor, the administrator; but other portions of the record disclosed that he was a citizen of Oregon. Before the trial of this cause, the plaintiff Ferris, a citizen of the state of Washington, was appointed administrator of the estate of David L. Kelly in such state. He intervened and prayed—as well as the assignee—for the foreclosure of the mortgage.

Upon this state of the record, the objection by the defendant to the court's jurisdiction to entertain this cause, it being a foreclosure of a mortgage upon land in this district, is overruled. Gillespie v. Pocahontas Coal & Coke Co. (C. C.) 162 Fed. 743; Wylie Permanent Camping Co. v. Lynch, 195 Fed. 401, 115 C. C. A. 288; Sun Printing & Pub. Ass'n v. Edwards, 194 U. S. 377, 24 Sup. Ct. 696, 48 L. Ed. 1027; Mahoning Valley Railway Co. v. O'Hara, 196 Fed. 948, 116 C. C. A. 495; Greeley v. Lowe, 155 U. S. 58, 15 Sup. Ct. 24, 39 L. Ed. 69; Dick v. Foraker, 155 U. S. 404, 15 Sup. Ct. 124, 39 L. Ed. 201; Kentucky Coal Lands Co. v. Mineral Dev. Co. (C. C.) 191 Fed. 899; Texas Company v. Central Fuel Oil Co., 194 Fed. 8, 9, 114 C. C. A. 21; Western Loan & Savings Co. v. Butte & Boston Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101.

All the following transactions occurred at Portland, Or.:

On November 27, 1909, the mortgagee and his wife contracted to sell defendant the lands covered by the mortgage in the present suit. The contract price was $65,000. The deed was to contain the usual

covenants to warrant and defend the title. A deed to the property was executed upon the same day and placed in escrow.

After the contract was made, one Frank G. Kelly, a brother of the mortgagee, notified the defendant that he (Frank G. Kelly) claimed an interest in the property and that David L. Kelly, the mortgagee, was incompetent to dispose of his property on account of his mental condition. On December 17, 1909, the mortgagee notified the escrow agent not to deliver the deed to defendant. This action appears to have been taken on account of the claim of interest in the land asserted by Frank G. Kelly. Two or three days later, the mortgagee left Portland for California on account of his health. There is no evidence that, after that time, he had knowledge of any of the steps subsequently taken.

Defendant then proposed to Frank G. Kelly to bring a suit to quiet title to the land, in which was to be determined the competency of David L. Kelly. Frank G. Kelly—being desirous that the sale should be consummated—gave, in the name of the D. L. Kelly Lumber Company, described as a partnership consisting of D. L. Kelly and Frank G. Kelly, a bond of indemnity to the defendant, recited to be in consideration of its contracting to purchase said lands, in which bond the obligor warranted the title and undertook to indemnify defendant against all suits, claims, and proceedings which might be brought on account of David L. Kelly and his wife, or Frank G. Kelly, or the heirs of David L. Kelly on account of such land.

At the same time, as a part of the same transaction, Frank G. Kelly gave a quitclaim deed to the defendant, and the defendant promised to pay him $5,000 if he would secure quitclaim deeds from the other heirs. To make it appear that this $5,000 was to be paid him for some other purpose, and thereby provide an answer to the possible contention that this promise to pay for such service was a confession of the defect in the title, an elaborate arrangement was made with Frank G. Kelly, which it is not necessary to describe in detail.

Upon the completion of this arrangement and the delivery to defendant of the foregoing undertaking, the defendant accepted the deed from David L. Kelly and wife; paid $32,500 of the purchase price; and on February 3, 1910, executed two notes—secured by the mortgage now in suit—each for $16,250, one due in one year, the other in two years, with interest at 5 per cent. per annum from date, both payable at the Merchants' National Bank of Portland, Or. The defendant immediately entered into possession of the land, and has so remained ever since, removing the greater part of the timber therefrom, for which the land was chiefly valuable.

On August 18, 1910, David L. Kelly died intestate, leaving surviving him the following heirs at law: Mabel J. Kelly, widow; Thomas G. Kelly, brother; John B. Kelly, brother; Frank G. Kelly, brother; Elizabeth Roberts, sister; Bernice R. Dibbel, sister; Louise S. Kelly, sister; Bernice Killoran, niece. His death was caused by paresis.

In March, 1911, one of his heirs, Thomas G. Kelly, brought suit against the defendant and the other heirs of the mortgagee, alleging that the mortgagee was the owner of the land covered by the mort-

224 F.—38

gage at the time of deeding the same to the defendant; that the defendant in the present suit obtained the deed by fraud; that, at the time of its execution, David L. Kelly was insane, and therefore incompetent to give the deed; that defendant acquired the land for $65,-000; and that it was actually worth $200,000. The prayer of the complaint in that cause was for the cancellation of the deed to the defendant, the eviction of defendant, and the quieting of title in the heirs of David L. Kelly. Several heirs, including Frank G. Kelly, appeared in that suit, praying the same relief as complainant therein. The widow of David L. Kelly at all times contended for the validity of her deceased husband's deed, and certain of the other heirs took no part whatever in the litigation.

Prior to the hearing of the present suit, settlement was made by the defendant with all the parties in the suit for the cancellation of the deed, save Thomas G. Kelly; the defendant paying such heirs $4,375. After the commencement of the trial of the present cause, Thomas G. Kelly dismissed his suit to quiet title.

A reduction of the amount due, according to the terms of the mortgage, by the amount paid the heirs in settlement of the suit for cancellation of the defendant's deed from the mortgagee, together with the expenses incurred in such cause, is asked in the answer. Upon the trial, this claim was expressly waived by the attorney for the defendant. The following is an extract from the report of the proceedings:

"The Court: I understand your position in the paying of this $5,000, you are not urging that in this case in any way to defeat the note and mortgage? Mr. Strode: No, sir. The Court: You claim that what you spent should lessen the amount of the mortgage, but not defeat it? Mr. Strode: We do not claim that $5,000 as a credit on this mortgage. We paid that as our experience with those people; that is what it cost us."

The defendant in its brief filed has—notwithstanding the foregoing—contended for this reduction.

As this concession of counsel occurred early in the trial, it is manifest that it must be held that defendant is bound by this waiver, as plaintiff had the right to rely thereon throughout the remainder of the proceedings and make no further showing. It is clear, in any event, that it could not be allowed.

In this suit to foreclose, the mortgage upon the realty is incidental to the notes secured by the mortgage. The court is not concerned with the question whether, pending administration, the title to the realty is in the administrator or the heirs. It may be, and the court is inclined from the conduct of the parties in this cause to conclude, that the heirs believe they will be the ones chiefly, in the end, to be benefited by the administrator's recovering in this suit; but the court cannot presume upon this record that they will be the sole beneficiaries, or treat them as the real parties in interest.

[2] The suit to cancel the deed was not between the same parties as the present suit to foreclose, nor their privies. The suit to cancel the deed was in no sense an attack on the grantors' title, showing any breach of warranty or failure of consideration for the notes. That of which complaint was made in that cause was the defendant's fraud

in getting the title, and not an allegation of failure of title. If it cost the defendant to defend against that allegation of fraud, or to settle that controversy, it was nothing for which David L. Kelly was in any wise responsible under the terms of his contract, his deed, or the mortgage accepted by him, and could not be considered as a constructive ouster.

"A covenantor is not liable to the covenantee for damages sustained by the latter by reason of an unsuccessful attack upon his title by a third person." 11 Cyc. 1122d.

This is too obvious to require the citation of further authority. For the same reason, no reduction can be allowed for the expenses incurred by the defendant in the suit by the heirs to cancel the deed.

[3] Defendant seeks a further reduction of the amount due under the mortgage of $5,000 on account of there having been included, in the lands conveyed to defendant and covered by the mortgage, a certain ten-acre tract to which David L. Kelly had no record title. This land, with the timber thereon, was shown by the evidence to be worth not more than $450.

The defendant's contract with David L. Kelly, to purchase the lands, contained the following provision:

"The first parties will, as promptly as possible, cause to be prepared abstracts of title for the said lands and timber showing good and clear title in them and submit the same for examination to the second party or its attorneys; and the second party shall have 20 days from submission of such abstracts to examine the same. Any objections to the abstracts or title not made in writing within said 20 days shall be deemed waived."

The defendant took the land without objection to the title, after full opportunity to examine the abstracts. It has removed the timber and has not been disturbed in its possession. Under these facts, it cannot be relieved against the mortgage merely because there appears to have been no title of record in David L. Kelly. Peters v. Bowman, 98 U. S. 56, 25 L. Ed. 91; Edgar v. Golden, 36 Or. 452, 48 Pac. 1118, 60 Pac. 2; 11 Cyc. 1120, 1126; 8 Am. & Eng. Encyc. Law (2d Ed.) 175.

[4] The bond executed by Frank G. Kelly for himself and David L. Kelly, doing business as D. L. Kelly Lumber Company, undertook to indemnify the defendant—

"from any and all acts, claims, demands, actions, suits or proceedings, of any and every nature that may at any time be made, asserted, brought or prosecuted by, or on behalf of, or on account of the said D. L. Kelly, or his wife, Mabel Kelly, or the said Frank G. Kelly, or the estates, heirs at law, legatees, devisees or personal representatives, executors, administrators or assigns, of either of them, in or to or upon any of the above-described real property and timber."

This undertaking being several as well as joint, it may be conceded that it would afford a ground of recoupment for the sums paid by defendant to the heirs in settlement of the suit to cancel the deed, were it admitted or established that Frank G. Kelly had authority from David L. Kelly for its execution; but such authority is not shown. If these lands were, in fact, those of the partnership, standing in the name of David L. Kelly, and it were conceded that the bond or undertaking would be unaffected by the statute of frauds, still Frank G. Kelly

could only be considered an agent of his partner-brother. In the absence of express authority or ratification, it is doubtful whether he would have the authority to bind his brother by rescinding or modifying such a contract of sale as that already made by David L. Kelly; for by the making of that contract David L. Kelly manifested his intent, and there would be no presumption that he acceded to the modification of that agreement made by Frank G. Kelly.

An agent for the sale of property—and Frank G. Kelly, as a partner, can be held to be no more—would have authority to make covenants of warranty as to the title, because they are customarily made in such sales; but he clearly would have no authority, merely by reason of his partnership, to bind his brother, his partner, as a surety, or indemnitor in an undertaking against possible attacks to be made upon the transfer of title, for such is not the custom or usage in sales of real estate. And he, certainly, would have no authority to bind him as an indemnitor from attacks that might thereafter be made by Frank G. Kelly, the agent, or partner, who would therein, necessarily, have an interest adverse to his principal, the surety, his partner whom he sought thereby to bind, an interest the adverse nature of which is made still more plain by the fact that, as part of the same arrangement, the defendant employed him to secure quitclaim deeds from the other heirs contracting to pay him $5,000 for such service, of all of which matters the defendant, in its dealing with Frank G. Kelly, had knowledge. 31 Cyc. 1365b, 1387g, 1432b, and 1571v.

[5] Defendant relies upon certain tenders to defeat the recovery of interest. By the terms of the notes, they were made payable at the Merchants' National Bank, Portland, Or. Upon the maturity of the first note, defendant made a written tender of the amount due upon the first, and the interest due upon the second. As a condition to the acceptance of the tender, the surrender of the note was demanded and a receipt for the interest paid, signed by the administrator of the estate of David L. Kelly, or other legal representative. This tender was not actually made to, or upon notice to, or with the knowledge of, the administrator of the estate, but to the president of the Merchants' National Bank.

Before the maturity of the second note, the defendant made a further tender of the face amount of the second note and one year's interest, recited to be the interest due to the date of its maturity. This tender was made in the same manner as the first and was like conditioned. It also contained a notice of the former tender and set out a copy thereof, reciting that the defendant, Mountain Timber Company, had been at all times and was ready to comply with the terms of said first tender.

Later, and before the maturity of the second note, a third tender was made. It differed from the other two in that it purported to be made to both the administrator and administratrix of the estate of David L. Kelly. Payment of both notes was tendered in the amount of $34,937.50, being the face of the two notes and interest on one for a year and the other for two years. This tender was conditioned upon the quieting of title to the lands purchased against the claims

of Thomas G. Kelly. The further demand was made, as a condition of the tender, that title and possession of the ten acres, already mentioned, be vested in the Mountain Timber Company. Notice was also included in this of the two former tenders. The third tender was made in the same manner as the other two.

The present suit was brought after these tenders were made. The mortgage provided that any timber cut by defendant upon the mortgaged lands before full satisfaction of the mortgage should be paid for at the rate of $2.50 per thousand feet, at or before the time of cutting the same. There was no attempt to comply with this provision before, or after, the making of these tenders, although a large amount of timber was cut and removed from the land. . At the commencement of the suit, the complainant Burke asked an injunction against the further cutting of timber in such manner. To avoid the issuance of such injunction, the defendant, with the United States Fidelity & Guaranty Company as surety, executed a bond to the complainant Burke in the amount of $45,000, conditioned to pay any judgment executed herein.

It appears that defendant had been a depositor and customer of the Merchants' National Bank for two years prior to the tenders. The money accompanying those various tenders was procured in the following manner: The defendant presented a check on a Nebraska bank to the Merchants' National Bank. It was cashed by the latter, the cash tendered the president of the bank with the written terms of tender already mentioned, and the president refused the tender. The money was then taken back to the teller's window and returned to the bank, the bank returning to defendant its check on the Nebraska bank —these transactions all occurring in a few minutes, and it being understood in advance by the defendant and the president of the Merchants' National Bank exactly what would be done. There is no evidence that any money was left with the bank or otherwise set aside to keep these tenders good, or meet either of the notes.

In its answer, the defendant makes no tender, and there has been no attempt in court to keep its tender good, except the recital in its answer first filed herein alleging its willingness to pay and discharge the notes, conditioned, among other things, upon the dismissal of the Thomas G. Kelly suit and the giving of the quitclaim deed by him to the Mountain Timber Company. This offer was not kept good in its later answer wherein a dismissal and stay of the suit were asked for.

Upon this state of facts, it would be inequitable to disallow any part of the interest upon these notes, or hold the mortgage lien discharged by the tenders. Bissell v. Heyward, 96 U. S. 580, at page 587, 24 L. Ed. 678; Eastern Ore. Land Co. v. Moody, 198 Fed. 7, 119 C. C. A. 135; Beardsley v. Beardsley, 86 Fed. 16, at page 23, 29 C. C. A. 538; State of Illinois v. Ill. C. R. Co. (C. C.) 33 Fed. 730, at page 776; Cain v. Garfield, Fed. Cas. No. 2,293; Cheney v. Bilby, 74 Fed. 52, 20 C. C. A. 291; Coghlan v. So. Carolina R. Co. (C. C.) 32 Fed. 316; Hoeschler v. Bascom, 44 Wash. 673, 87 Pac. 943; Silver v. Moore, 109 Me. 505, 84 Atl. 1072; Lewis v. Helton,

144 Ky. 595, 139 S. W. 772; 38 Cyc. 158a, 163c; 28 Am. & Eng. Encyc. Law (2d Ed.) 38.

The court finds that $2,500 is a reasonable amount to be allowed as attorney's fee to the plaintiffs.

Findings and decree may be prepared in accordance with the foregoing.