Argued October 2, affirmed November 3, rehearing denied December 15, 1925.

## NICOLAI-NEPPACH CO. *v.* M. ABRAMS ET AL.

### (240 Pac. 870.)

**Pleading—Permitting Trial Amendment to Reply Held Within Trial Court's Sound Discretion.**

1. In action on partnership guaranty, permitting trial amendment to reply, setting up estoppel of junior partner to deny senior partner's authority to make contract by failure to notify plaintiff that he would not be bound, *held* within trial court's sound discretion.

**Partnership—Partner Generally cannot Bind Partnership by Contract of Guaranty or Suretyship.**

2. Generally, one partner cannot bind partnership or copartner by contract of guaranty or suretyship, unless such authority is expressly granted or implied from common course of business or previous course of dealing between parties.

2. Power of member of partnership to bind firm as surety or indorser, see note in 13 **Am. Dec.** 115. See, also, 20 **R. C. L.** 899.

Partnership—Burden on Party Alleging Partnership Guaranty to Show Authority of Partner Signing It or Ratification by Copartner.

3.   Burden is on party alleging partnership guaranty to show that partner signing it had express or implied authority to do so, or that other partner ratified it.

Partnership—Firm Bound by Partner's Unauthorized Contract of Suretyship, Adopted, Ratified and Acted on by Copartner.

4.   When contract of suretyship, made by partner without authority, is afterwards adopted or ratified, expressly or impliedly, and acted on, by copartner, firm is bound.

Partnership—Whether Partner Acts Within Scope of Partnership Business in Executing Contract Fact Question.

5.   Whether partner acts within scope of partnership business in executing contract is fact question for trial court or jury.

Principal and Agent—Agent's Authority may be Enlarged by Extraordinary Conditions.

6.   Ordinary extent of agent's authority may be enlarged by emergency or extraordinary conditions.

Appeal and Error — Findings not Set Aside if Supported by Any Substantial Evidence.

7.   Trial court's fact findings in law action have same force and effect as jury's verdict, and will not be set aside if supported by any substantial or competent evidence.

Partnership—Findings That Partner had Implied Authority to Sign, and That Copartner Knowingly Ratified, Guaranty, Held Supported by Evidence.

8.   In action on partnership guaranty, evidence *held* to support trial court's findings that one partner had implied authority to sign guaranty, and that copartner knowingly ratified it.

Partnership — Partner's Intent to Ratify Copartner's Unauthorized Contract must be With Knowledge of Facts.

9.   To establish ratification of partner's unauthorized contract by copartner, there must be intent to ratify with knowledge of all facts.

Evidence—Presumption That Person Intends Ordinary Consequences of His Voluntary Act.

10.   It is presumed that person intends ordinary consequences of his voluntary act.   (Section 799, subdivision 3, Or. L.)

From Multnomah: GEORGE TAZWELL, Judge.

Department 2.

This is an action to collect the sum of $650.   A default judgment was entered against defendant M.

---

10.   See 10 R. C. L. 874.

Abrams. The issues between the plaintiff and defendant, Ben Abrams, were tried by the court without the intervention of a jury. Findings of fact were made and a judgment entered in favor of plaintiffs. Defendant Ben Abrams appeals.

The pleadings show that M. Abrams and Ben Abrams were copartners doing business under the firm name and style of Oregon Hardware Company, in Portland, Oregon. On July 6, 1920, the Columbia City Furniture Company was indebted to the plaintiff, a corporation, in the sum of $700 for goods, wares and merchandise, sold and delivered to that company. On that date the defendants entered into an agreement with plaintiff, of which the following is a copy:

"Portland, Ore., July 6, 1920.
"Oregon Hardware Company and M. Abrams,
    "To the Nicolai Neppach Co.

"For and in consideration of an extension of time to the Columbia City Furniture Company, we the undersigned, guarantee the payment of their entire account, and future credits you may extend to the said Columbia City Furniture Company and if they fail to make their payments, we or either of us promise to pay said accounts.
                         "Oregon Hard. Co.
                         "M. Abrams."

The debt of the Columbia City Furniture Company not having been paid, action was brought on the instrument set out. The answer of defendant, Ben Abrams, after denying some of the allegations of the complaint, tersely stated, is to the effect that prior to October, 1920, Ben Abrams and M. Abrams, were partners for the sole purpose of conducting a general hardware store in the City of Portland, under the

name and style of Oregon Hardware Company; that the business was strictly the buying and selling of hardware and kindred merchandise; that the execution of the contract of guaranty was outside the scope of said partnership business and that neither had this defendant Ben Abrams nor said partnership, at any time, ever authorized any person to sign or enter into said agreement, or any contract or agreement of guaranty or suretyship in the name of the partnership.

A reply put in issue the new matter of the answer. Plaintiff further pleaded, in an amended reply by way of estoppel, that the defendant Ben Abrams, on or about the sixth day of July, 1920, obtained the knowledge and had means of the knowledge of the agreement set forth above: that he did not at any time give any notice to plaintiff that he would not be bound by the terms thereof; that by reason of his silence in this regard, the plaintiff was prejudiced to its damage because of its reliance on the contract and lulled into security and repose and failed to take any immediate steps to protect its rights against the Columbia City Furniture Company, which company was indebted to the Oregon Hardware Company in the sum of $8,000.

That M. Abrams was invested with full authority to sign the agreement for the reason that the Oregon Hardware Company was a creditor of the Columbia City Furniture Company, and it was for the interest of the Oregon Hardware Company to keep the Columbia City Furniture Company a going concern so that it might obtain its indebtedness.    AFFIRMED.

For appellant there was a brief over the name of *Messrs. Ganoe & Ganoe,* with an oral argument by *Mr. James Ganoe.*

For respondent there was a brief over the name of *Mr. Guy L. Wallace,* with an oral argument by *Mr. Thomas Mannix.*

BEAN, J.—1. The appealing defendant, Ben Abrams, whom we will call the defendant, assigns error of the court in permitting plaintiff to file its amended reply at the time of the trial. This was in the sound discretion of the trial court and from an examination of the record there was no abuse in the exercise of such discretion. The point is not well taken.

2. At the close of plaintiff's testimony, the defendant moved for a nonsuit and assigns error in the denial thereof. This raised the main question in the case. As a general rule one partner has no authority to bind the partnership of his copartner by a contract of guaranty or suretyship: 1 Brandt on Suretyship and Guaranty, 31; *Burke* v. *Mt. Timber Co.,* 224 Fed. 591, 596; 1 Lindley on Partnership, 341 et seq.; 20 R. C. L. 899; *Charman* v. *McLane,* 1 Or. 339.

In the absence of express authority given for the purpose or implied from a common course of business, or from the previous course of dealing between the parties, one party cannot bind the firm or his copartners by a contract of guaranty: 30 Cyc. 515, 517; *Union Nat. Bank* v. *Neill,* 149 Fed. 711, 714 (10 L. R. A. (N. S.); 426, 79 C. C. A. 417; *Durden* v. *Dekle,* 3 Ga. App. 97 (59 S. E. 315); *Hollister Bros.* v. *Blumenthal,* 9 Ga. App. 176 (70 S. E. 970).

3. The burden of proof is on the party alleging the guaranty to show that the partner who signed the same had the express or implied authority therefor,

or that the other partner ratified the agreement: 30 Cyc. 515, 517; 2 C. J. 928; 21 R. C. L. 928; *First Nat. Bank* v. *Farsom,* 226 N. Y. 218 (123 N. E. 490); *Haswell* v. *Standing,* 152 Iowa, 291 (132 N. W. 417; Ann. Cas. 1913B, 1326); *Waughtal* v. *Kane,* 108 Iowa, 268 (79 N. W. 91).

4–6. When the contract of suretyship is made by a partner without authority, if the other member of the firm afterwards adopts or ratifies it and acts on it, the firm will be bound. Such ratification may be either expressed or implied. It may be established by circumstances and conduct as well as by express statements: 30 Cyc. 516, 517; 20 R. C. L. 888, § 98. "Whether a partner acts within the scope of the partnership business is a question of fact for the determination of the court or jury as the case may be." *Cassidy* v. *Saline County,* 14 Okl. 532 (78 Pac. 324).

In 1 Lindley on Partnership (2 ed.), 343, in a note we read:

"That one partner was authorized to subscribe the firm name as accommodation sureties for a third person may be proved by circumstances." *Butler* v. *Stocking,* 8 N. Y. 408.

As said in *Bank* v. *Farson, supra:*

"Undoubtedly emergencies or extraordinary conditions may arise in virtue of which the ordinary extent of the authority of the agent will be enlarged."

The mere fact that a certain person is a member of two concerns, or firms, and acts for each of them in indorsing a note, is not sufficient to put a third party on notice of possible fraud: 20 R. C. L. 886, § 97.

7, 8. It is a firmly settled rule that the findings of fact made by the trial court in an action at law have

the same force and effect as the verdict of a jury and will not be set aside if there is any substantial or competent evidence to support the findings. The testimony in the case, which we will not encumber the record to set out at length, tended to support plaintiff's case, and to show substantially as follows:

The defendant Ben Abrams is the son of M. Abrams and for about ten or twelve years prior to the transaction in question they had been in business, first under the name of M. Abrams & Son, and then they did business under the name of the Oregon Hardware Company. The son went into business with his father without any articles of copartnership or any definite agreement as to the authority of either of the partners. The older gentleman looked after the money matters, as he states, and the account at the bank was kept in the name of M. Abrams. For about fifteen months the son was absent in the army during the late war, and the father had the entire control of the business. The sister and brother of this defendant rendered assistance in the store during that time. While the son was away, M. Abrams, when the goods were sold to the Columbia City Furniture Company, promised that the Oregon Hardware Company would stand back of the furniture company and see that plaintiff was paid for the lumber sold to the furniture company and afterward he executed the instrument in furtherance of the former agreement. Upon the return of the son and his re-entry into the business no special arrangements were made for any change in the conduct of the business, which appears to have been in the nature of a family dealing. The senior Abrams, as a witness for defendant, testified in refer-

ence to the instrument in question, in answer to interrogatories, as follows:

"Q. In signing it, you reported to the Nicolai-Neppach Company that you had authority?

"A. Yes, I had authority to sign the paper; yes.

"Q. You had authority?

"A. Without the knowledge of my boy. * *

"Q. But you didn't think you were exceeding your authority at the time?

"A. No, I didn't think so."

The officers of the plaintiff, at the time guaranty was signed, had no knowledge that the son was interested in the business and believed that M. Abrams was sole owner of the Oregon Hardware Company business,—therefore, they dealt with him; that as the furniture company failed to pay the indebtedness they endeavored to collect the same from the Oregon Hardware Co., Mr. C. E. Dawdin, president of the plaintiff company, testified as follows in regard to a conversation with Mr. Abrams, senior, Mr. Abrams, junior, being present:

"Mr. Neppach and myself went into the Oregon Hardware Company store, trying to collect this bill which M. Abrams had contracted with us, and after having had a talk with Mr. Abrams urging him to pay the bill, he, as he had several times before, put us off, and I said to him that I needed a hose, and he said, 'All right, my son will take care of it,' and Mr. Abrams, junior, got the hose and did it up. I asked him how much it was, and he told me. I said, 'Now, Mr. Abrams, we will apply this on the Oregon Hardware Company indebtedness to the Nicolai-Neppach Company.' He said all right, he consented, and Mr. Abrams, junior, was standing just a few feet away; he heard the conversation. I took the hose and left."

The defendant, Ben Abrams, testified in regard to the transaction, relating to the purchase of a hose,

putting an entirely different version to the matter. He stated in part as follows: ·

"A. Mr. Neppach took the hose and said to my father to charge the hose on the account, so my father told Mr. Neppach that he had nothing to do with the store, 'But if my son is willing to charge it to Nicolai-Neppach Company, which they are surely good for the amount of $11.75,' he said, so I said, 'Yes, I will charge the account to Nicolai-Neppach Company.'"

This conflict in the evidence raises a question for the trier of facts to determine, which in this instance was the trial court. We are not called to pass upon this matter.

9, 10. Counsel for defendant Ben Abrams contends that he did not intend to ratify the act of his father in signing the agreement; and to establish a ratification there must be an intent to ratify with knowledge of all the facts. The testimony indicated and the court found, in effect, that at the time Mr. Dawdin and Mr. Neppach, representing the plaintiff company, called at the store of the Oregon Hardware Company, and presented plaintiff's claim, under the agreement of guaranty, and strongly urged the payment thereof, Ben Abrams was present and heard all of the conversation. There were no customers, or other persons in the store at the time and therefore Abrams, junior, knew all about the claim and paid $11.75 in merchandise on the claim without protest or objection until long afterward. This fact, according to plaintiff's testimony, of paying a portion of the indebtedness and acknowledging accordingly its validity, making no objection for a long time, coupled with the further fact that the older Abrams apparently transacted the main part of the business,

and kept the account of deposits of the firm in the bank in his own name, and the father and son were doing business together and the son saw his father, as he states, nearly every day, and the other circumstances of the case, we think tended to show that the son ratified the signing of the guaranty by his father. The son contends that he did not intend to ratify the act of his father. It is a presumption of law that a person intends the ordinary consequences of his voluntary act: Or. L., § 799, subd. 3.

Taking all of the testimony into consideration, part of which we have referred to, we think it indicated that the senior Abrams had implied authority for signing the guaranty, and also that the son knowingly ratified the transaction. There was some substantial competent evidence to support the findings. That being the case, the judgment of the Circuit Court should not be disturbed. The judgment is affirmed.                                    AFFIRMED.

BROWN, RAND and BELT, JJ., concur.