MURPHY et al. v. ARKANSAS & L. LAND & IMPROVEMENT CO.,
Limited, et al.

(Circuit Court, W. D. Arkansas, Texarkana Division. November 24, 1899.)

1. CORPORATIONS—POWERS—ACCOMMODATION PAPER.

    A private corporation, by the consent of all of its stockholders and directors, may execute accommodation paper by which it will be bound.

2. SAME—NEGOTIABILITY.

    A promissory note, executed by a private corporation, made payable at a time certain, to the order of "B., or his assignee," is a negotiable promissory note, and remains a negotiable promissory note into the hands of whomsoever it may pass, notwithstanding B., the payee, indorses it to a third person without using the words, in the indorsement, "to his order" or "to bearer."

3. ACCOMMODATION PAPER—TRANSFER.

    A transferee of negotiable accommodation paper, who acquires the same for a reasonable consideration, before its maturity, in the regular course of business, holds the same free from a set-off originating out of collateral matters, and which set-off would be good against his transferror and the original payee, even though the transferee acquired the note with notice of the existence of such set-off, for the reason that a set-off is not an equity which applies to negotiable paper; and the general rule is qualified and restricted to those equities arising out of the bill or note transaction itself.

4. SAME.

    For further particulars, see the decision.

(Syllabus by the Court.)

Cantrell & Loughborough, for plaintiffs.
John M. Moore, for defendants.

ROGERS, District Judge. This is a bill brought to foreclose a deed of trust executed to W. C. Rodgers, as trustee, by the Arkansas & Louisiana Land & Improvement Company, Limited, afterwards, for convenience, called the "Land Company," to secure a promissory note executed by said Land Company to said "John D. Beardsley or his assignee." The facts will sufficiently appear from the opinion.

Paul F. Beardsley, who is a brother of the defendant John D. Beardsley, owned a one-third interest in a certain judgment in favor of the Arkansas & Louisiana Railroad Company against John D. Beardsley for about $30,000. In order to rid himself of Paul F.

Beardsley's part of this judgment, John D. entered into a written agreement with Paul F. to pay the latter $6,000 cash, and execute to his order a note for $4,000, secured by a deed of trust on certain property at Nashville, Ark. The land at the time stood in the name of the Arkansas & Louisiana Land & Improvement Company, Limited, a corporation organized under the laws of the state of Louisiana; and in consideration of this Paul F. agreed to satisfy in full his one-third interest in said judgment. In pursuance to this agreement, the Land Company executed its note in the following form:

"$4,000.00.                                    Homer, La., Nov. 22nd, 1895.

"One year from December 5th, 1895, for value received, the Arkansas & Louisiana Land & Improvement Company, Limited, promises to pay to J. D. Beardsley or his assignee four thousand dollars ($4,000.00), with interest from Nov. 5th, 1895, at the rate of 8% per annum, payable semiannually. This note is payable, principal and interest, at the office of John M. Moore, Little Rock, Arkansas, and is secured by deed of trust of even date herewith upon lots, blocks, and lands in and about the town of Nashville, Ark.

"[Signed]                                    Jno. A. Richardson,

"Pres't Arkansas and Louisiana Land & Improvement Company, Limited."

This note was secured by deed of trust on the land at Nashville, Ark., executed by the Land Company to Rodgers, as trustee, as agreed upon. Exchange for $6,000, also the note and deed of trust, accompanied by a blank power of attorney to be executed by said Paul F. to said Rogers, authorizing the latter to cancel his one-third interest in the $30,000 judgment against John D., was sent by the attorney of John D. to a bank in New York, which was directed to deliver the exchange for $6,000 and the note and deed of trust to Paul F. upon the latter executing the power of attorney authorizing said Rogers to cancel his interest in the $30,000 judgment; all of which was done about the 1st of December, 1895. On the 10th of December, 1895, Paul F. caused the deed of trust to be recorded at Nashville, Ark., and on the 17th of the same month Paul F., by a separate writing, assigned the note and deed of trust to his attorney, Edward H. Murphy. The deed of trust is in the usual form, and, among other things, contains the following recital:

"On motion it was resolved that this company will give J. D. Beardsley its bond of obligation for four thousand dollars, secured by a deed of trust on its property in Howard county, state of Arkansas, said bond or obligation to bear interest at 8% per annum from November 5, 1895, and to run one year from December 5, 1895: provided, however, that before delivery of such bond and deed of trust said J. D. Beardsley shall deposit, or cause to be deposited, with the president of this company, the stock of this company heretofore issued to him, to the amount of twenty thousand dollars. And whereas, the said J. D. Beardsley has deposited with the president of this company the aforesaid stock of the par value of twenty thousand dollars, and has received the note of this company of even date herewith for the sum of four thousand dollars, falling due one year from the 5th day of December, 1895, and bearing interest, payable semiannually, from the 5th day of November, 1895, and to secure the same this deed is made."

At the trial it was agreed that the Arkansas & Louisiana Land & Improvement Company, Limited, executed the note and mortgage with the full assent of all its directors and stockholders, and that it owned then and now ample property to pay its debts, including the note and deed of trust it had executed in pursuance of the resolution

embraced in the deed of trust, which resolution was passed at a regular directors' meeting, all the directors and stockholders being present. It is shown that the only stockholders were the directors, and that all the stock belonged to John D., except some nominal shares held by the other two directors,—one being his son, and the other his attorney,—and that both these directors held the stock merely in order to comply with the law which required them to hold stock in order to be officers and directors of the company. In short, that in truth and in fact John D. owned all the stock and the company owed practically nothing then or now. It is further agreed that the directors of said Land Company knew at the time that the note was executed for what purpose John D. wanted the note, and that he claimed a set-off then in litigation against Paul F., which, if sustained by the courts, he intended to use to satisfy the $4,000 note. It is further agreed that the said set-off claimed by John D. against Paul F. was a judgment in the United States circuit court for the Eastern district of Arkansas, the enforcement of which the latter had enjoined in August, 1891, and which was finally decided in favor of John D. at the October term, 1897, of the court of appeals of the Eighth circuit. 29 C. C. A. 538, 86 Fed. 16.

It is a question as to whether the note sued on is accommodation paper. The Land Company, to all intent and purpose, belonged to John D. Beardsley. It executed this note; all of its stockholders, in the opinion of the court, understanding for what purpose it was to be used. It was made payable to John D. Beardsley, or his assignee, and by him indorsed to Paul F. Beardsley as part consideration of one-third of the judgment Paul F. held against John D. It was all one transaction. John D. secured the satisfaction of the one-third interest in the judgment which Paul F. held, and, in consideration of it, gave a note made by a corporation, in which he, in fact, owned all the stock, which note was made payable to himself, and indorsed by him to Paul F. To all intents and purposes, therefore, it was John D. who gave the note and $6,000 in money to Paul F. as consideration for the satisfaction of the latter's interest in the judgment. I incline strongly to the opinion that the transaction should be viewed from that aspect, and, if so, the note was not accommodation paper. However, I have not been able to find any authority directly on that point, and hence I do not rest the case at all on that aspect of it. For the purposes of the decision it will be assumed that the note was accommodation paper, and that Paul F. and Edward Murphy knew it, for I think the note, taken in connection with the resolution of the Land Company recited in the face of the deed of trust, would carry conviction to any intelligent business man or attorney, who did not shut his eyes to the facts, that it was accommodation paper, provided, of course, the Land Company be treated as a separate and distinct entity from John D. This note and deed of trust were in the hands of both Paul F. and Edward Murphy prior to their transfer to Murphy. Moreover, Murphy, prior to that time, had a contingent interest in the judgment in part owned by Paul F., as shown by his own evidence and the instrument of writing fixing his compensation for services for the collection of the same. I think, too, it is fair to as-

sume that Murphy knew that John D. claimed to have an offset against this note, and that it became manifest to him before he purchased the note that John D. was struggling to make a settlement with Paul F. for his interest in the $30,000 judgment in such a way as to get the benefit of that set-off, and that he knew the set-off claimed was a judgment in the circuit court of the United States for the Eastern district of Arkansas, in chancery, for $7,756.29, which the said Paul F. had restrained the said John D. from collecting. Around this question of set-off was carried on the maneuvering between the two brothers, beginning as early as the summer of 1895,—John D. striving to get the benefit of his set-off in any settlement made between them, and Paul F. striving to defeat him in that effort; Mr. Murphy having become the attorney of Paul F. in 1893 for the collection of Paul F.'s interest in the $30,000 judgment; that relation continuing until after the transfer of the note and deed of trust by Paul F. to Murphy in December, 1895. It can scarcely be conceived that Murphy did not understand the situation, and know what differences were in dispute between these brothers. This conclusion is confirmed by this significant circumstance: Paul F., on the 2d of September, 1895, wrote to John D. Beardsley a letter, in which he says:

"Yours of the 9th and 14th ultimo both duly received and noted. I return herewith Mr. Moore's letter as requested. I would have returned it sooner, but Mr. Murphy, my attorney, has been away taking his vacation; hence the delay."

This letter shows that Mr. Moore's letter had been retained by Paul F. for the purpose of showing it to Mr. Murphy, who was off on his vacation. It is shown by the proof that this letter of Mr. Moore's was a letter written to John D. Beardsley, and which the latter had forwarded to Paul F., who had detained it longer than he otherwise would in order to show it to Mr. Murphy. A copy of this letter of Mr. Moore's is in evidence. It is dated August 12, 1895, and addressed to John D. Beardsley. In this letter Mr. Moore strongly advises his client, John D., not to make any settlement with Paul F. for his one-third interest in the $30,000 judgment which would deprive him of the right to avail himself of several grounds of set-off which he had against Paul F., and adds:

"In my negotiations with Mr. Beardsley [meaning Paul F.] I advised him distinctly that I would not entertain any proposition, or advise you to entertain any proposition, that would in any manner impair your legal or equitable rights and remedies to use any counterclaim or set-off you might have against him or the railway company. This was distinctly understood between us."

After this letter of Mr. Moore's was put in evidence, the deposition of both Paul F. and Murphy were taken. Paul F. was unable to state what letter of Mr. Moore's was referred to by him in his letter to John D., above referred to; and Mr. Murphy makes no statement in regard to the Moore letter at all, and does not deny that he saw it. I conclude, therefore, that he did see it, and, if he did, he knew that John D. had been advised before the note and deed of trust were assigned to him—indeed, before they were executed—that he should not settle the interest of Paul F. in the judgment in such a way as to deprive himself of any equities or set-offs he might have against Paul

F.   Mr. Murphy then became the assignee of the note with the knowledge that it was accommodation paper, and that John D. claimed a set-off against it.

I have also reached the conclusion, after a careful investigation of the authorities, that the note is, in form, negotiable.   Daniel, Neg. Inst. §§ 99, 1496; Tied. Com. Paper, par. 21; Wilson Co. v. National Bank, 103 U. S. 773, 26 L. Ed. 488; Porter v. City of Janesville (C. C.) 3 Fed. 619; Story, Prom. Notes, § 44.   The indorsement of the note by John D. to Paul F. is in these words:

"Pay to Paul F. Beardsley, protest and notice of nonpayment being hereby waived.            J. D. Beardsley, by J. M. Moore, Agent and Attorney."

It is insisted that this indorsement was restrictive, and did not authorize Paul F. to indorse the note to a third person.   In the opinion of the court the contention cannot be sustained.   A note negotiable in form, as between maker and payee, is not deprived of its negotiable character by a restrictive indorsement, and hence Paul F. took it just as if it had been indorsed to him or his order.   Daniel, Neg. Inst. § 663.

It is urged that the Land Company had no authority to execute accommodation paper, and hence the execution of the note was ultra vires.   I incline to think that the charter of the Land Company is broad enough to authorize it to execute accommodation paper, but it makes no difference as to that.   The Land Company is a private corporation.   It owed no debts.   The paper was issued by the consent of all the stockholders, and it has been accepted, and the consideration parted with by Paul F. for it.   Can it now be permitted to take shelter under the plea of ultra vires?   I think not.   In 1 Cook, Corp. § 3, the author says:

"A private corporation may become an accommodation indorser, distribute its assets, issue its notes. stock, or bonds below par. or, for no consideration whatever, give away its assets, or may mortgage its property for the personal benefit of a part or all of its stockholders or officers, provided, always, that all the stockholders assent, and provided that corporate creditors are not injured, and provided that no statute forbids such acts.   The doctrine of ultra vires is no longer held to forbid such acts by a private corporation under such circumstances.   *   *   *   The theory of a corporation is that it has no powers except those expressly given or necessarily implied.   But this theory is no longer strictly applied to private corporations.   A private corporation may exercise many extraordinary powers, provided all of its stockholders assent, and none of its creditors are injured.   There is no one to complain except the state, and, the business being entirely private. the state does not interfere.   Thus, fifty years ago the courts would have summarily declared it illegal for a business corporation to become an accommodation indorser of commercial paper, but to-day there is no rule of public policy which prohibits a private corporation having a capital stock from becoming the accommodation indorser of commercial paper, providing such indorsement is made with the knowledge and assent of all the directors and stockholders, and provided corporate creditors are paid."

In the subsequent discussion of the author it is shown that whatever is done by a private corporation with the assent of all of its stockholders, and where no creditor is injured, although it may be ultra vires, is lawful, and will be enforced by the courts.   The principle does not apply to railroad corporations or quasi public corporations.

It is insisted that Murphy, being aware of the vice in the origin of the note, must show that he bought in good faith, for a valuable consideration, and without notice. In short, that if Murphy knew, when the note was assigned to him, that it was accommodation paper, and that John D. Beardsley had a set-off against it, he could stand upon no better footing than his assignor, Paul F. In short, that the holder must acquire the instrument without notice of fraud, defect of title, illegality of consideration, or other fact which impeaches its validity in its transferror's hand. It is true that knowledge of fraud or illegality impeaches the bona fides of the holder, or at least destroys the superiority of his title, and leaves him in the shoes of his transferror. But is this principle applicable where there is no vice in the origin of the paper except that it is accommodation paper, and where the defense against the holder is a set-off against his transferror, the existence of which he knew at the time he purchased the paper? Daniel, Neg. Inst. § 790, says:

"It is to be observed, however, that knowledge of the mere want of consideration as between the original parties alone will not prevent the purchaser from becoming bona fide holder and occupying a better position than his transferror. Accommodation paper is daily placed in market for discount or sale, and an indorsee or purchaser who knows that a bill or note still current was drawn, made, accepted or indorsed without consideration is as much entitled to recover as if he had been ignorant of the fact, and even where he acquires it overdue."

In 1 Am. & Eng. Enc. Law (2d Ed.) p. 360, the general doctrine is stated as follows:

"It follows, therefore, that one who has, in good faith, taken an accommodation bill or note, before maturity, for value, and in the regular course of business, may enforce it against prior accommodation parties, whether acceptors, drawers, makers, or indorsers, although he knew when he received the instrument that it was accommodation paper."

At section 1435 of Daniel on Negotiable Instruments it is said:

"The doctrine of set-off has but a limited application to negotiable paper, it being a distinguishing characteristic of negotiable securities that when they have passed into the hands of third parties for value no set-off admissible in pleadings between original parties is available. The rule that a party taking an overdue bill or note takes it subject to the equities to which the transferror is subject does not extend so far as to admit set-offs which might be available against the transferror. A set-off is not an equity, and the general rule stated is qualified and restricted to those equities arising out of the bill or note transaction itself, and the transferee is not subject to a set-off which would be good against the transferror arising out of collateral matters."

The author says this was the English rule, and, while there is some conflict of decision in the American states, "it seems to be the uniform ruling everywhere that, although the paper be transferred after maturity, no set-offs between antecedent parties which arose after the transfer will be available against the indorsee."

It is also contended that the note and deed of trust sued on is not the property of the plaintiff Murphy, but is the property of Paul F. Beardsley, and that it was not assigned to Murphy for a valuable consideration. This is a question of fact to be determined by the evidence. Both Mr. Murphy and John D. Beardsley have testified emphatically that the note and deed of trust were assigned to Murphy in writing on the 17th of September, 1895. The instrument of writ-

ing was produced and read in evidence. They both testify that the consideration paid for the note by Murphy was $500 in cash and his services as an attorney for Paul F. Beardsley, the value of which is estimated by Mr. Murphy at $3,000. Mr. Murphy has also produced and read in evidence a written agreement by and between him and Paul F. Beardsley, assigning the note and deed of trust to him. The note also appears to be indorsed by Paul F. Beardsley, by E. H. Murphy, agent and attorney, and also indorsed by Paul F. Beardsley himself. When these indorsements were made does not appear, but there is a recital of indorsement in the instrument assigning it. That they were not made at the time the written instrument was executed is, I think, established by the proof, because at that time the note was in the hands of John D. Beardsley, in Louisiana, for the purpose of having his indorsement of it corrected. John D. Beardsley has also produced and read in evidence a contract between him and Paul F. whereby it appears that as early as 1893 he had entered into a written agreement with Paul F. to collect the $30,000 judgment, and stipulating the consideration he was to be paid therefor. By the terms of that agreement the professional services of Mr. Murphy were procured for the collection of Paul F.'s one-third interest in the $30,000 judgment, either by further prosecution of the suit, or in any other manner; and also for the collection of a certain other sum of money which was allowed Jones & Martin, as attorneys, against the Arkansas & Louisiana Railroad Company, which had become the property of the said Paul F.; and for the performance of these services, thereafter to be rendered, the said Murphy was to obtain 10 per cent. upon the actual sum realized and collected on the judgment, which was to have the approval of the said Paul F., provided there was no litigation; and, in the event of further litigation, the said Murphy was to have 20 per cent. Mr. Murphy also testifies that Paul F. had verbally agreed with him to assign and transfer to him a sufficient amount of his interest in the $30,000 judgment to pay his fee. This settlement of John D. and Paul F., when consummated, had the effect of wiping out all the security Murphy had for his fee, and it seems but natural that in making it Murphy would look after and provide for its payment. The transaction, therefore, was natural, and the amount paid reasonable, under the circumstances. It must be remembered the note was not due for a year. It had to be collected. The services of Murphy had already continued two years prior to the transfer, and litigation in collecting the note might reasonably have been expected under the circumstances, coupled with the possibility of entire loss. I think, therefore, the consideration was reasonable.

Opposed to these facts are circumstances and the statements contained in Murphy's letters to Mr. Moore and John D. Beardsley. They are circumstances creating a strong suspicion that the transfer was merely colorable. They are, however, not irreconcilable with the bona fides of the assignment. In seeking to have John D. correct the indorsement on the note, Murphy wrote a letter, after the assignment was made, the effect of which was to make the impression on John D. Beardsley that Paul F. still owned the note. It is quite

probable he thought that John D. would be more apt to correct the note in accordance with the contract between him and Paul F. than he would if he knew the note was assigned to a stranger. Moreover, it is quite probable that Murphy was in doubt as to the negotiability of the note, and thought it probable that the suit would have to be brought in the name of Paul F. At all events, in taking the assignment, he provided for that contingency; or he may have been in doubt as to what remedy he would invoke,—whether to hold the note, and sue upon it and the deed of trust, or to file a bill to vacate the settlement, or for correction of the note and for specific performance. At all events, the letter is not irreconcilable with his sworn evidence. Still later Paul F. wrote a letter to John D., leaving the impression on the latter that he still held the note. But no admissions of his made after the transfer of the note could affect Murphy's title, or be made evidence against his title. It was competent to impeach the credibility of the evidence of Paul F., and tended to do so. But the title of Murphy did not depend on the evidence of Paul F., but rather on that of Murphy and the corroborating circumstances detailed. I think, therefore, the weight of the evidence, fairly considered, is in favor of the validity of the transfer. The result is, the deed of trust must be foreclosed, and it is so ordered.

Counsel on both sides have urged other questions upon the attention of the court, but, in the opinion of the court, their determination is not necessary to a correct decision of the case. Decree for the plaintiff Edward H. Murphy.