W. T. BRINSON AND MRS. LAURA H. HARVEY, EXECUTRIX OF THE ESTATE OF MRS. HARRIET L. HYMAN, v. THE MILL SUPPLY COMPANY, INCORPORATED (E. F. SMALLWOOD, RECEIVER).

(Filed 7 May, 1941.)

1. **Corporations § 20—**

   In order for a contract executed by an officer of a corporation to be binding on the corporation it must appear that it was incidental to the business of the corporation or was expressly authorized, and that it was properly executed.

2. **Corporations § 15—Contract held not method adopted by corporation to purchase its own stock.**

   The president of defendant corporation executed a note for money borrowed by him from a third person and put up as collateral security capital stock of the corporation owned by him. The note provided that upon the payment of each $1,000 on the note, stock in the same amount should be released to the maker and that payment of the note should be guaranteed by the corporation. Later the corporation, through its officers, executed a guaranty of payment containing the same provision for the release of the capital stock to its president upon the payment of each $1,000 on the

note. Thereafter the treasurer of the corporation wrote the payee reciting the conditions of the note but reciting the condition for the release of the collateral as being that it should be released and turned over to the corporation rather than to its president. *Held:* The letter formed no part of the contract, and there being no evidence that any of the capital stock was released to the corporation, the payee may not successfully contend that the contract was a method adopted by the corporation for the purchase of its own stock as authorized by its charter.

3. **Corporations § 18—Guaranty of payment of its president's note solely as accommodation to its president held beyond scope of express powers.**

The express power granted defendant corporation in its charter to undertake the liabilities of any firm or corporation, refers to the power granted to acquire the good will, rights, property and assets of any firm or corporation, and does not authorize the corporation to guarantee payment of a note executed by a third person solely for the accommodation of such third person, nor does such guaranty come within the express power conferred by the charter to raise money for the purpose of the corporation, and its act in guaranteeing payment of the note of its president solely for his accommodation is not within the express powers ·of the corporation.

4. **Corporations § 17—**

A corporation is a creature of the State and has only the powers specifically granted it in its charter and such other powers as are fairly and reasonably to be implied from the express powers granted.

5. **Corporations § 19—**

The implied powers of a corporation are merely those necessarily inferred for the accomplishment of the express powers granted, and implied powers can never enlarge the express powers and thereby authorize the corporation to engage in activities collateral to the purposes of its incorporation.

6. **Same—**

A corporation does not have the implied power to guarantee payment of a note executed by its president solely for the accommodation of its president.

7. **Corporations § 21—**

The doctrine that a corporation is estopped to plead that a certain act is *ultra vires* applies when the corporation has accepted the benefits of the transaction in question, and does not apply when the *ultra vires* act is solely for the accommodation of its president or other third person and no consideration or benefit is received by the corporation.

8. **Corporations § 34—**

The payee of a note executed by the president of a corporation, the corporation not being a party to the note, is not entitled to the allowance of her claim against the receiver of the corporation based upon the action of the corporation in guaranteeing the payment of the note for the sole

accommodation of the president, since the act of the corporation in guaranteeing payment of the note is outside the scope of its express and implied powers and is *ultra vires.*

APPEAL by Mrs. Laura H. Harvey, executrix, claimant, from *Thompson, J.,* at September Term, 1940, of CRAVEN.   Affirmed.

Civil action instituted by W. T. Brinson in behalf of himself and all the stockholders and creditors of The Mill Supply Company against The Mill Supply Company, alleging insolvency and seeking the appointment of a receiver and the liquidation of the corporation.

When the original action came on to be heard on the motion for the appointment of a receiver, E. F. Smallwood was appointed receiver and placed in charge of the assets of the defendant corporation to the end that the corporation might be liquidated and the assets applied to the payment of creditors.

The claimant, Laura H. Harvey, executrix of the last will and testament of Harriet L. Hyman, filed claim with the receiver in the amount of $2,318.97, representing the balance due on a note in the sum of $5,000.00, executed by Albert F. Patterson, who was at the time of the execution thereof president of the defendant company.   The facts in respect thereto are as follows:

On 14 March, 1931, Albert F. Patterson borrowed from Harriet L. Hyman the sum of $5,000.00, evidenced by his note which, under the terms thereof, was payable in stipulated monthly installments.   Fifty shares of the capital stock of The Mill Supply Company was deposited with the payee as collateral security and the note contained the stipulation "that upon payment of the sum of $1,000 on the principal of this note that $1,000 of the par value of said stock shall be released to the maker of this note and upon payment of each subsequent $1,000 a like amount of collateral shall be released to the maker.

"The payment of this note is guaranteed by The Mill Supply Company in accordance with a separate contract of guaranty of even date herewith executed by The Mill Supply Company."

On 2 April, 1931, A. F. Patterson, president, and the secretary of the defendant corporation, executed, in the name of the corporation, a contract of guaranty of said note, which contract of guaranty was executed pursuant to a resolution duly adopted by the executive committee, 14 March, 1931.   This contract contains a similar stipulation to the effect that upon the payment of one thousand dollars upon the principal of the note, one thousand dollars par value of the stock deposited as collateral is to be released to A. F. Patterson, the maker.

The executive committee in adopting the resolution authorizing the execution of the contract of guaranty acted by virtue of a resolution of the board of directors vesting it, during the interim between meetings of the board, "with the same power and authority as is vested in the Board of Directors and by any act of said committee taken between the meetings of the Board of Directors shall be as equally binding on the company as though said action had been taken by the Board of Directors."

The receiver denied the claim and the claimant appealed to the Superior Court. Upon hearing in the Superior Court the judge found the facts and concluded that the contract of guaranty was *ultra vires*. It thereupon adjudged that the claimant recover nothing of the receiver. The claimant excepted and appealed.

*R. A. Nunn for Laura H. Harvey, executrix, claimant, appellant.*
*R. E. Whitehurst for receiver, appellee.*

BARNHILL, J. Was the act of the officers of the defendant corporation, in authorizing and executing the contract of guaranty, *ultra vires* as contended by the receiver? The court below so concluded. In this conclusion we concur.

For a contract executed by the officer of a corporation to be binding on the corporation it must appear that (1) it was incidental to the business of the corporation; or (2) it was expressly authorized; and (3) it was properly executed.

The charter of the defendant corporation vests it with general authority to acquire, own, mortgage, sell and otherwise deal in real estate, chattels and chattels real without limit as to amount; to deal in mortgages, notes, shares of capital stock and other securities; to acquire the good will, rights, property and assets of all kinds and to undertake the whole or any part of the liabilities of any person, firm, association or corporation, and to pay for the same in cash, stock, bonds, debentures, notes or other securities of this corporation, or otherwise; to purchase or acquire its own capital stock from time to time to such an extent and in such manner and upon such terms as its board of directors shall determine; to borrow or raise money for any purpose of its incorporation, and to issue its bonds, notes or other obligations for money so borrowed, or in payment of or in exchange for, any real or personal property or rights of franchises acquired or other value received by the corporation and to secure such obligations by pledge or mortgage; and "to do all and everything necessary, suitable, convenient or proper for the accomplish-

ment of any of the purposes, or the attainment of any one or more of the objects herein enumerated, or incident to the power herein named, or which shall at any time appear conducive or expedient for the protection or benefit of the corporation, either as holders of or interest in, any property, or otherwise; with all the powers now or hereafter conferred by the laws of North Carolina upon corporations." There are other powers granted which are in nowise pertinent to the question here presented.

The powers thus granted do not expressly authorize the corporation to issue accommodation paper or to guarantee the obligations of a third party.

It is true that in a letter addressed to the payee of the note the treasurer of the defendant corporation recited the conditions of the note, including the provision in respect to the surrender of the collateral, and says in the letter that such stock "shall be released and turned over to The Mill Supply Company, free and discharged of the lien of said note." But this letter was merely one of transmittal. It constitutes no part of the contract. The guaranty enclosed, as well as the note, which together form the contract, provides that such stock, on compliance with the condition, is to be surrendered to the maker A. F. Patterson. Furthermore, there is no evidence tending to show that any of the stock was ever delivered to the corporation. Hence, the contract was not a method adopted for the purchase by the defendant of its own stock as authorized by its charter. Claimant's contention in that respect cannot be sustained.

The provision in the charter authorizing the corporation "to undertake the whole or any part of the liabilities of any person, firm, association or corporation and to pay for the same in cash, stock, bonds, debentures, notes or other securities of this corporation or otherwise" is in connection with, related to and a part of the power granted "to acquire the good will, rights, property and assets of all kinds of any other person," etc. The power granted is the power to assume the liabilities of such firm or corporation whose rights, property and assets are acquired by the corporation. This provision may not be construed to mean that the corporation was vested with power to issue accommodation paper or to become guarantor upon the obligation of a third party.

The contract of guaranty was no part of a transaction in which the corporation was borrowing or raising money for the purposes of its incorporation. It was clearly and exclusively an act in aid and for the accommodation of its president as an individual. From it the corporation received no benefit.

Hence, it appears that the undertaking of the corporation was not directly "necessary, suitable, convenient or proper for the accomplishment of" either of these or of any other purpose authorized by the charter.

Was the contract of guaranty incidental to or in furtherance of the powers expressly granted? If not, it was *ultra vires* and unenforceable.

A corporation is an artificial being, created by the State, for the attainment of certain defined purposes, and, therefore, vested with certain specific powers and others fairly and reasonably to be inferred or implied from the express powers and the object of the creation. Acts falling without that boundary are unwarranted—*ultra vires.* 7 R. C. L., 673, 19 C. J. S., 965.

"A corporation, being the mere creation of the law, possesses only those properties which the charter of its creation either expressly or as incidental to its creation confers." *Marshall, C. J.,* in *Dartmouth College case,* 4 Wheaton, 518, 4 L. Ed., 629. "An incidental power exists only for the purpose of enabling a corporation to carry out the purposes expressly granted to it—that is to say, the powers necessary to accomplish the purposes of its existence—and can in no case avail to enlarge the express powers and thereby warrant it to devote its efforts or capital to other purposes than such as its charter expressly authorizes, or to engage in collateral enterprises, not directly, but only remotely, connected with its specific corporate purposes." 19 Cyc., 1096; *Victor v. Mills,* 148 N. C., 107.

Ordinarily, the power to endorse or guarantee the payment of negotiable instruments for the benefit of a third party is not within the implied powers conferred upon a private business corporation.

The general rule is that no corporation has the power, by any form of contract or endorsement, to become a guarantor or surety or otherwise lend its credit to another person or corporation. 19 C. J. S., 917, sec. 1230, and numerous authorities cited in note 14; 7 Fletcher on Corps., 647; 7 R. C. L., 675.

In the absence of express statutory authorization, a corporation has no implied power to lend its credit to another by issuing or endorsing bills or notes for his accommodation, where the transaction is not related to the business activity authorized by its charter as a necessary or usual incident thereto. 14A C. J., 732, sec. 2781; 19 C. J. S., 915, sec. 1228.

A corporation is without implied power to guarantee for accommodation the contract of its customers with third persons on the ground that it may thus stimulate its own business. Such use of its credit is clearly beyond the power of an ordinary business corporation. *Bowman Lum-*

*ber Co. v. Pearson,* 221 S. W., 930 (Tex.); 11 A. L. R., 547; *Northside R. Co. v. Worthington,* 88 Tex., 562, 53 Am. State Rep., 778. It has no authority to use its credit for the benefit of a stockholder or officer. *Hunter v. Garanglo,* 246 Mo., 131, 151 S. W., 741; *1st Sav. & T. Co. v. Romadca,* 132 C. C. A., 357; 216 Fed., 113.

A claim of the holder of promissory notes made by an officer of a corporation against the corporation as accommodation endorser thereon, which endorsement was authorized by the stockholders, is not provable against the corporation in subsequent bankruptcy proceedings. *Re Amdur Shoe Co.,* 13 Fed. (2d), 147.

*Trustees v. Realty Co.,* 134 N. C., 41, and other cases to the same effect, holding that where the contract is executed by the other party to the contract and the corporation has received the benefit thereof it is estopped from setting up the defense that it was *ultra vires,* are not in point.

The question here presented is not whether there was sufficient consideration to support the note. The question is, was there sufficient consideration moving to the corporation to support the contract of guaranty. The liability of the individual upon the note (which was not signed by the corporation) is not contested. It is the liability of the corporation which is at issue. Hence, the rule that where the corporation has received the benefits under a contract which is not incidental, it will be held liable under the doctrine of estoppel, for the reason that it should not be permitted to accept and retain the benefits and at the same time disavow the contract on the plea of *ultra vires,* has no application. It is when the corporation has received the full benefit of the contract that it will not be relieved of liability because the contract was *ultra vires. Bank v. Bank,* 198 N. C., 477, 152 S. E., 403; *Quarries Co. v. Bank,* 190 N. C., 277. See, also, *Lumber Co. v. Al & Lloyd Parker, Inc.,* 122 Tex., 487, 62 S. W. (2d), 63; *Brand v. Lumber Co.,* 77 S. W. (2d), 600; 14A C. J., 329, note 16. This rule does not impose liability upon the corporation when no benefit has accrued to it by reason of its contract— here the contract of guaranty.

"If it shall be found that the notes executed by the president of defendant corporation, not in pursuance of or as an incident of the corporate business, wholly without consideration, or benefit of any kind to the corporation, then such execution and delivery of the notes would be an *ultra vires* act." *Lentz v. Johnson & Sons, Inc.,* 207 N. C., 614, and cases cited. *Comrs. of Brunswick v. Bank,* 196 N. C., 198, 145 S. E., 227.

The contract of guaranty was executed for the benefit of an individual. No part of the consideration moved to the defendant corporation. It

was not either expressly or impliedly authorized by its charter to enter
into contracts for the accommodation of a third party.    To permit the
payment of the claim would clearly result in an invasion of the assets
of the defendant corporation in the hands of the receiver as a trust fund
for the payment of legitimate creditors.    See 7 R. C. L., 198.    The
defendant's plea of *ultra vires* must be sustained.

The judgment below is

Affirmed.