EASTERN TRUST & BANKING CO.

*vs.*

THOMPSON L. GUERNSEY

AND

MAINE BROADCASTING COMPANY, INC.

Penobscot.    Opinion, March 18, 1949.

*James E. Mitchell, Edgar M. Simpson,* for plaintiff.

*Verrill, Dana, Walker, Philbrick and Whitehouse,*
*Brooks Whitehouse, Edward T. Gignoux,* of counsel,
for defendant.

SITTING: STURGIS, C. J., MURCHIE, TOMPKINS, FELLOWS, MERRILL, JJ.

STURGIS, C. J. This is an action on the joint and several promissory note of Thompson L. Guernsey and the Maine Broadcasting Company, Inc. payable on demand to the Eastern Trust & Banking Company. At the trial, issue having been joined on the defendant's several pleas of the general issue and the brief statement of the Maine Broadcasting Company, Inc. that its signature on the note was for the accommodation of Thompson L. Guernsey and of this the Eastern Trust & Banking Company had knowledge or notice, the plaintiff, proof of signature and execution not having been denied, introduced the note and rested, the defendant Thompson L. Guernsey made no defense, and at the close of the evidence the jury were directed to return a verdict of $43,482.67 for the Eastern Trust & Banking Company and to this and other rulings the Maine Broadcasting Company, Inc. reserved exceptions.

The note in suit dated June 25, 1941, and for $50,500 is a renewal of a note of similar tenor for $60,000 made by Thompson L. Guernsey and the Maine Broadcasting Company, Inc., as comakers, on November 28, 1939, and discounted by the Eastern Trust & Banking Company. At that time the Broadcasting Company operated a radio station in Bangor and Thompson L. Guernsey was its President and Treasurer, owned all of its capital stock, managed its business and had absolute and exclusive control of its corporate affairs and this was known to the officers of the Trust Company where the Broadcasting Company was a depositor and had frequently negotiated substantial loans. And the Broadcasting Company was not only solvent but owed no debts and had no creditors.

On November 28, 1939, Thompson L. Guernsey called at the Trust Company, interviewed its president and requested a loan of $60,000 on a joint and several note of even date for that amount, payable on demand with interest at five per cent and signed Thompson L. Guernsey and Maine Broadcasting Co., Inc., Thompson L. Guernsey, President. Although no information was given or inquiry made as to the use which was to be made of this loan or for whose benefit it was being negotiated the note as made was accepted and, apparently assuming that the loan was for the Broadcasting Company, credit on its checking account was suggested. But this was not satisfactory to Mr. Guernsey and at his request the Second National Bank of Boston, a correspondent of the Trust Company, was directed to pay "Maine Broadcasting Company or Thompson L. Guernsey $60,000 upon identification" and on November 29, 1939 it issued its checks in that aggregate amount to Thompson L. Guernsey and notified the Trust Company of the payment and a charge to its account. As to what became of these checks or their proceeds is not here disclosed and Thompson L. Guernsey although present at the trial and available as a witness was not called upon to reveal.

The record also shows that Thompson L. Guernsey still owning all of the stock of the Broadcasting Company, and continuing to manage and control its affairs, not only never denied his own liability or that of the Maine Broadcasting Company, but, without suggestion that it was made for his own accommodation, caused the note given the Trust Company on November 28, 1939, as related, to be reduced by regular monthly payments to $50,500 and on June 25, 1941 renewed it by the note of similar tenor and execution for that amount, which with interest accrued has since been reduced to $43,482.67 and is now here in suit. And it was not until Mr. Guernsey lost his offices in and control of the Broadcasting Company on February 17, 1944, when all of his stock in that Corporation which he had pledged in January 1938 to the Congress Square Hotel Company of Port-

land as security for a personal loan of $180,000 was sold at judicial sale, that the Broadcasting Company, then under a new management, advanced the claim that these notes were made for accommodation and denied liability.

As this case was presented at the trial proof of the signatures on and the authority of Thompson L. Guernsey to execute the notes of June 25, 1941 and November 28, 1939 for the Maine Broadcasting Company, Inc. was waived. *Rule X Supreme Judicial and Superior Courts; Bank* v. *Merriam,* 114 Me. 437, 439; 96 A. 740; *Gilman* v. *Carriage Co.,* 125 Me. 108; 131 A. 138. And under the pleadings the issues to be determined were whether the notes were for Thompson L. Guernsey's accommodation, the Eastern Trust & Banking Company had knowledge or notice thereof and therefor, as to the Maine Broadcasting Company, Inc. the notes in their execution were *ultra vires* and void. The burden rested on the Maine Broadcasting Company, Inc. to sustain these issues by proof of legal weight and sufficiency.

The note of June 25, 1941 was negotiable and regular upon its face and as and when the Eastern Trust & Banking Company received it the Maine Broadcasting Company, Inc. is deemed prima facie to have become a party thereto for value. *Uniform Negotiable Instruments Act,* R. S., 1930, Chap. 164, Sec. 24. But the note was made only for the purpose of renewing the note of November 28, 1939 which Mr. Guernsey and the Broadcasting Company had made and given to the Trust Company, no new consideration was then paid, and on the record the Broadcasting Company had received no value for becoming a party to the original note. For, as related, Thompson L. Guernsey at his own request received the loan, and with no proof that any part of it was ever paid to the Broadcasting Company or used for its benefit, the conclusion is not without warrant that Thompson L. Guernsey obtained that money as an individual and used it for his own purposes. It cannot be held that the presumption that the Broadcasting Company became a party for

value to either of these notes of November 28, 1939 and June 25, 1941 was not rebutted.

So too a finding that the Maine Broadcasting Company, Inc. not only executed the note of November 28, 1939 but also the renewal note of June 25, 1941, which we are considering, for the accommodation of Thompson L. Guernsey, the other maker, and of this the Eastern Trust & Banking Company had notice could be sustained. There is no doubt that Mr. Guernsey made out both of these notes and signed his own name and subscribed the name of the Broadcasting Company upon them. He applied for the loan on the original note and, rejecting a proposal that the money be credited to the account of the Broadcasting Company, requested and obtained payment of it in checks to his own order and the Trust Company is charged with knowledge of the incidents of that transaction. Thompson L. Guernsey also made out the note of June 25, 1941, subscribed the name of the Maine Broadcasting Company, Inc. on it and, receiving no new consideration, gave it to the Eastern Trust & Banking Company as a renewal of the original note. These facts and the inferences that lie in them, unexplained and never clarified, are sufficient to put the Trust Company on inquiry and notify it that when it accepted these notes of June 25, 1941 and November 28, 1939 it was taking accommodation paper. In principle, as to notice, this case cannot be distinguished from *Boyle* v. *Lewiston Trust Company*, 126 Me. 74; 136 A. 292.

The general rule is that unless a private corporation is expressly authorized to do so by its charter its execution of accommodation paper merely for the benefit of a third person is beyond the scope of its corporate authority. And where the charter is not before the court it will not be presumed that the corporation has been granted unusual and extraordinary powers. 6 *Fletcher Cyclopedia Corporations,* § 2505. But the paper is not null and void and if the corporation has creditors the title of a holder before maturity

can only be defeated by proof that he took it with knowledge that it was accommodation paper or under such facts and circumstances that he is chargeable with notice. This rule was applied to an insolvent corporation in receivership where the rights of creditors were involved. *Johnson* v. *Johnson Bros.*, 108 Me. 272; 80 A. 741, Ann. Cas.; 1913 A. 1303, and cases cited. The rule is not in conflict with Section 29 of the Uniform Negotiable Instruments Act as construed in *Madigan, Receiver* v. *Lumbert*, 136 Me. 178; 5 A. (2nd) 278.

But there is convincing authority that a corporation cannot rely on *ultra vires* and is liable on accommodation notes it has executed in excess of its corporate authority where all the stockholders assent and there are no corporate creditors.

In *Thompson on Corporations*, (3d Ed.) Vol. 3, § 2301, it is said:

> "The rigid rule that corporations can neither execute, accept nor endorse negotiable paper for accommodation is not without its limitation. * * * Undoubtedly a private corporation may become an accommodation endorser or surety or it may issue its notes, stocks or bonds below par or even without consideration; it may even give away its assets or mortgage its property for the benefit of individual stockholders or officers, where all the stockholders assent to any such transaction and where there are no corporate creditors." See *Cook on Corporations*, (3d Ed.) Vol. 1, § 3.

This rule has been generally accepted and the fact that a corporation exceeded its authority in executing accommodation paper and acted *ultra vires* rejected as a defense where all the stockholders assent to the transaction and no rights of the state or creditors intervene. *Murphy* v. *Arkansas & L. Land & Improvement Co.*, 97 Fed. 723; *In Re Amdur Shoe Co.*, 13 F. (2nd) 143; *Thomas* v. *E. J. Curtis Sons Co.*, 7 F. Supp. 114; *Sargent* v. *Palace Cafe Co.*, 175

Cal. 737; 167 P. 146; *Perkins* v. *Trinity Realty Co.*, 69 N. J. Eq. 723; 61 A. 167; *Martin* v. *N. F. P. Mfg. Co.*, 122 N. Y. 165; 25 N. E. 303. Decisions in these cases expressly or by implication rest on the doctrine of estoppel. That doctrine is approved in *Dome Realty Co.* v. *Gould*, 285 Mass. 294, 301; 189 N. E. 66. It was not considered in *Johnson* v. *Johnson Bros.*, 108 Me. 272; 80 A. 741, Ann. Cas.; 1913 A. 1303. We think it should be adopted and applied in this case.

When the Maine Broadcasting Company, Inc. on June 25, 1941 and November 28, 1939, executed its notes, even if they were for the accommodation of Thompson L. Guernsey, he was the only stockholder of the corporation, necessarily assented and there were no creditors. He was the alter ego of the Broadcasting Company, undoubtedly handled its moneys and affairs as if they were his own and for practical purposes the corporation was a fiction. With general knowledge at least of this situation the Eastern Trust & Banking Company loaned $60,000 on these notes of which $43,482.67 remains unpaid and it must be assumed that the granting of that loan was induced in part, at least, by the fact that the Broadcasting Company was a maker. Thompson L. Guernsey has paid his personal loan for which his stock was pledged when the notes were made, and as the pledge had been extinguished when the present stockholders acquired his stock, they cannot complain. *McCampbell* v. *Railroad*, 111 Tenn. 55, 75; 77 S. W. 1070; 102 Am. St. Rep. 731. And the rights of the Maine Broadcasting Company, Inc. were not affected by that transaction. In these circumstances the Maine Broadcasting Company, Inc. is estopped to invoke the defense of *ultra vires* in this action.

The Exceptions relating to the exclusion of evidence are without merit. The ruling below directing a verdict for the Eastern Trust & Banking Co. was not error. The mandate is,

*Exceptions overruled.*