PHILADELPHIA LIFE INSURANCE
COMPANY, Appellant,

v.

CROSLAND-CULLEN COMPANY,
Appellee.

No. 7161.

United States Court of Appeals
Fourth Circuit.

Argued April 23, 1956.
Decided May 28, 1956.

Julius C. Smith, Greensboro, N. C., and David E. Henderson, Charlotte, N. C. (Harrell Pope, Greensboro, N. C., Charles J. Henderson, Charlotte, N. C., Smith, Moore, Smith & Pope, Greensboro, N. C., and Henderson & Henderson, Charlotte, N. C., on the brief), for appellant.

William H. Abernathy, Charlotte, N. C., for appellee.

Before SOPER and DOBIE, Circuit Judges, and THOMSEN, District Judge.

THOMSEN, District Judge.

This case turns on the validity of an assignment of a life insurance policy by the beneficiary, a North Carolina corporation engaged in real estate development.

In 1947 defendant insurance company issued a $25,000 policy on the life of David B. Crosland, president of plaintiff corporation, which was named beneficiary. In October, 1950, this policy had a cash value of $799.24 in excess of a policy loan of $1,795.00. The only stockholders, directors or officers of plaintiff corporation at that time were David B. Crosland, president, 31 shares; his wife, Matilda H. Crosland, secretary, 28 shares; and her son, Charles H. Cullen, treasurer, 1 share.

On October 31, 1950, David B. and Matilda H. Crosland entered into a separation agreement, in which David agreed to make certain payments to Matilda. The agreement provided that Matilda

would hold her shares of stock in plaintiff corporation until the terms of the agreement were fully performed, at which time she would transfer all of her shares to David or his assigns. Matilda agreed to resign immediately as an officer of plaintiff corporation, and to give up her share of the profits of the corporation so long as the terms of the separation agreement were complied with, except that she was to be paid the sum of $1,000 for each year (not in excess of two years) in which the corporation earned more than $5,000. David agreed to assign to Matilda $15,000 of the $25,000 life insurance represented by defendant's policy, and to pay all premiums due thereon. Matilda was authorized to hold the policy until David fulfilled all of the terms of the separation agreement, which provided that, in the event David should die before he had fulfilled all its terms, defendant insurance company "is hereby authorized, directed and ordered to pay said $15,000 insurance to Mrs. Matilda H. Crosland".

At the same time a formal assignment of the policy to the extent of $15,000 was executed by plaintiff corporation to Matilda. This paper was signed: "Crosland-Cullen Company, Inc., By David B. Crosland, President, By Matilda H. Crosland, Secretary"; it was acknowledged by David B. Crosland, as President, who swore that the seal affixed to the assignment was the corporate seal of plaintiff corporation, and that it was so affixed by order of the board of directors. Charles H. Cullen, the only other stockholder and director, agreed to the assignment of the policy, although it was not authorized at any formal meeting of either stockholders or directors. The assignment was delivered to defendant insurance company in accordance with the terms of the policy on January 5, 1951.

Shortly thereafter David and Matilda were divorced, and David married Pauline Holmes, who, in 1952, became secretary of plaintiff corporation. All premiums on the policy were paid by the corporation. On May 19, 1953, David died of self-inflicted wounds. The attorney for plaintiff corporation notified defendant insurance company that it denied the validity of the assignment to Matilda on the ground that at the time of the execution of the assignment plaintiff corporation was heavily indebted and that the officers, directors and owners of the corporation could not use assets of the corporation to satisfy their personal obligations to the disappointment and defeat of the creditors of the company. In fact, plaintiff corporation was not insolvent; no receiver has ever been appointed for it; and no existing or subsequent creditor has ever objected to the assignment. A balance sheet prepared by the accountants for plaintiff corporation shortly after June 20, 1950, showed the corporation to have assets of $68,751.89, liabilities of $49,104.16, and a net worth of $19,647.-73. A statement as of June 30, 1950, prepared by the same accountants three years later for the purposes of this suit, showed total assets of $62,904.56 and total liabilities of $69,617.23. This statement, however, cannot be accepted as showing that the plaintiff corporation was insolvent on June 30, 1950, much less on October 31, 1950. In preparing the latter statement, the accountants included in the accounts payable all accounts which were paid in July, 1950, but included in the "Construction in Process" figure in the assets only items which had been paid for on June 30, 1950. In other words, if a carload of bricks had been placed in position in the houses but had not been paid for, the value of neither the bricks nor the labor was included among the assets, but the liability for the bricks was included among the liabilities.

Defendant insurance company advised the attorney for plaintiff corporation that it was "bound to recognize the assignment", see General Statutes of North Carolina, §§ 58–205, 58–206, and in June, 1953, issued two checks: one in the amount of $15,000 payable to the order of Matilda H. Crosland; the other in the amount of $7,360.45 payable to plaintiff corporation. The latter check represented the balance due on the policy after de-

ducting policy loans, and bore the notation that it was issued "in full payment of the account stated". Plaintiff corporation endorsed the check in pencil to the order of City Savings Bank of Charlotte, North Carolina, and delivered it to the bank as collateral security for the payment of a note of like amount, executed by plaintiff corporation to the bank. Plaintiff corporation then instituted this suit against defendant insurance company to collect the face of the policy, $25,000, and interest.

The district judge held that the assignment was invalid and filed an opinion, 133 F.Supp. 473, in which he concluded that plaintiff corporation was entitled to recover from defendant insurance company the face value of said policy of insurance, less the loan admittedly outstanding against it. After all of the evidence was in and the judge had made his findings of fact and conclusions of law in favor of plaintiff corporation, plaintiff corporation gave the bank an assignment of its claim against defendant insurance company in place of the check for $7,360.45, tendered the check to defendant's counsel, and when it was refused, delivered the check to the clerk of the court. Judgment was entered on December 14, 1955, for $22,360.45, with interest from July 19, 1953.

The Supreme Court of North Carolina has frequently held that a corporation is ordinarily bound by the acts of stockholders and directors only when they act as a body in regular session or under authority conferred at a duly constituted meeting. "As a rule authorized meetings are prerequisite to corporation action based upon deliberate conference and intelligent discussion of proposed measures." O'Neal v. Wake County, 196 N.C. 184, 145 S.E. 28, 29; Tuttle v. Junior Building Corp., 228 N.C. 507, 46 S.E.2d 313, and cases cited therein; Park Terrace, Inc., v. Phoenix Indemnity Co., 241 N.C. 473, 478, 85 S.E.2d 677, 680. None of the cases before Park Terrace involved a one-man dominated corporation. The majority opinion in that case ended as follows: "Query: Since McLean has acquired all the stock of plaintiff, is it now a corporation? This question is not presented by this record." 241 N.C. at page 478, 85 S.E.2d at page 680. The dissenting opinion cited and quoted leading texts and decisions, one of which is particularly pertinent here: " 'Thus it has been held that where a corporation was but the instrumentality through which an individual for convenience transacted his business, all of the authorities, not only equity, but the law itself, would hold such a corporation bound as the owner of the corporation might be bound, or conversely, hold the owner bound by acts which bound his corporation.' " 241 N.C. at page 481, 85 S.E.2d at page 682.

That was the state of the North Carolina law when the district judge filed his opinion in the instant case, August 25, 1955, 133 F.Supp. 473. Since that time, however, the Supreme Court of North Carolina has reheard the Park Terrace case, and the majority of the court has filed a new opinion, by Chief Justice Barnhill, 243 N.C. 595, 91 S.E.2d 584. The new opinion is in accord with the general law throughout the country, as set out in 13 Am.Jur. 160, which the court quoted with approval as follows: " 'The doctrine that a corporation is a legal entity existing separate and apart from the persons composing it is a legal theory introduced for purposes of convenience and to subserve the ends of justice. The concept cannot therefore, be extended to a point beyond its reason and policy, and when invoked in support of an end subversive of this policy, will be disregarded by the courts. Thus, in an appropriate case and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical, the corporate entity being disregarded where used as a cloak or cover for fraud or illegality.' " 243 N.C. at page 598, 91 S.E. 2d at page 587. The new opinion stated that when McLean purchased all the common stock of the plaintiff corporation, he became at least the equitable owner of the corporate property, and that this was true

even though he had only a contract to purchase the stock of one of the other stockholders. The court further held that he could not evade the consequences of his act by merely transferring some of the stock to third parties to comply with the statute requiring three stockholders. The court cited, with approval, Ballentine, Law of Corporations, p. 296, sec. 126, which is particularly apposite in the case at bar. That author there states: "The contracts of the sole shareholder, or all the shareholders, will bind the corporation in modern law, although not made by the authority of the board of directors, since they are the only persons beneficially interested, aside from corporate creditors. If they do not distinguish between corporate business and their individual affairs, or waive formalities established for their benefit, there is no reason why the courts should insist on such formalities. The contract of the owners of all shares will be regarded as binding on the corporation if so intended." To the same effect is Fletcher, Cyc. of Corporations, Vol. 1, secs. 41, 42, and Vol. 5, sec. 2099, which were cited by the North Carolina court. See also 1 Cook on Corporations (Sixth Ed.) sec. 3; Eastern Trust & Banking Co. v. Guernsey, 144 Me. 135, 65 A.2d 13; Dome Realty Co. v. Gould, 285 Mass. 294, 189 N.E. 66.

■■ These authorities require the conclusion that in the instant case plaintiff corporation and its present stockholders, who received their stock from or through David B. Crosland, are estopped to question the validity of the assignment. Cf. Brinson v. Mill Supply Co., 219 N.C. 498, 14 S.E.2d 505. No rights of creditors, either existing or subsequent, were shown to be involved. Under these circumstances, there is no justification in equity or in law for requiring defendant insurance company to pay again to plaintiff corporation the $15,000 which it has once paid in good faith to Matilda H. Crosland, as assignee of that corporation.

This conclusion makes it unnecessary for us to pass on the other questions discussed by the district judge and argued by the parties on this appeal.

The judgment must be reversed and the case remanded to the district court, with instructions to enter judgment in favor of defendant, with its costs, upon defendant's paying to the clerk of the district court the sum of $7,360.45, without interest, in exchange for the check of like amount dated June 5, 1953, issued by defendant to plaintiff. After the payment of costs in this court and in the court below, the district court shall dispose of the balance of said fund in accordance with the rights of plaintiff and of the assignee bank, as their interests may appear.

Reversed.